Spain, J.
Appeal from a judgment of the County Court of Ulster County (Bruhn, J.), rendered July 23, 1999, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal possession of a weapon in the third degree and criminal possession of a weapon in the fourth degree (two counts)!
Following a jury trial, defendant was convicted of, among other crimes, second degree intentional murder for the unwitnessed May 26, 1998 shooting death of Jefferey Hurd, his neighbor. Hurd had gone for a walk in the woods at approximately 7:45 p.m. and was later found with fatal gunshot wounds near the end of Reservoir Road, a remote area in the Town of Marlboro, Ulster County. The evidence connecting defendant to Hurd’s death included the ballistics analysis of the projectiles removed from the victim, which confirmed that they had been fired from the .38 caliber revolver found strapped to defendant’s waist during questioning at the State Police barracks in the early morning hours of the next day. DNA analysis of the socks worn by defendant at that time revealed the presence of the victim’s blood. The apparent motive, reflected in defendant’s statements to police and others, was defendant’s belief that the victim had recently taken items from his home. Upon his conviction, defendant was sentenced as a second felony offender to consecutive prison terms of 25 years to life on the murder count and seven years for criminal possession of a weapon in the third degree, and concurrent one-year terms for the two counts of criminal possession of a weapon in the fourth degree, relating to his possession of other weapons in his home. Defendant appeals, raising a host of challenges, all of which have been reviewed and determined not to warrant disturbing either his conviction or his sentence.
At the outset, defendant challenges County Court’s decision, following a hearing, denying his motion to suppress his statements to police, which he contends were the product of a custodial interrogation without advisement of Miranda warnings. Consistent with County Court’s findings, however, the suppression testimony established that around 11:45 p.m., State Police arrived at the scene and questioned the residents, including defendant, who lived near where the victim’s body was discovered, briefly asking what they had heard or seen and about *698 their activities that evening. Defendant and several of his neighbors then voluntarily accompanied town police and State Troopers back to the State Police barracks for further questioning. Defendant was transported to the barracks in the rear of an unmarked police car, arriving 20 to 25 minutes later at about 1:15 a.m., taken to an interview room, periodically questioned and then left alone. He was not handcuffed, frisked or accused of any crime and was allowed to move freely in between questioning. Defendant recounted that he had left home to go to the store around 7:20 p.m. but, having misplaced his wallet, went to his mother’s house and then to his workplace, returning home to learn that Hurd was missing. He later admitted to possessing several rifles and signed a written statement to that effect around 3:30 a.m.; around 4:00 a.m., Miranda warnings were read to him in view of his federal parole status; he indicated that he understood the warnings and consented to continuing to speak with the officers. Defendant never asked to leave or that questioning cease, he was not confronted with any incriminating evidence and the atmosphere of the interview was not in any manner inordinately coercive or unduly long (see People v Warren, 300 AD2d 692, 694 [2002], lv denied 99 NY2d 621 [2003]). During further inquiry around 6:30 a.m. regarding his wallet and bulges apparent in his pants pockets, defendant emptied his pockets, producing a pouch of bullets, and a subsequent frisk uncovered a loaded .38 caliber handgun strapped to the back of his waist. Defendant was placed under arrest and searched, revealing 35 to 40 rounds of ammunition. Miranda warnings were repeated, defendant again waived them and admitted to purchasing the gun years ago, stated that it never left his possession and that the lost wallet story was made up, but denied shooting Hurd.
The testimony fully supports County Court’s conclusions that the questioning of defendant was investigatory and defendant was not in custody until after the gun was discovered, at which point he was no longer free to leave and Miranda warnings were repeated (see People v Centono, 76 NY2d 837, 838 [1990]; People v Yukl, 25 NY2d 585, 588-589 [1969], cert denied 400 US 851 [1970]). We find no basis upon which to disturb County Court’s decision to discredit defendant’s testimony that he went to the barracks involuntarily and repeatedly requested the presence of an attorney during questioning and never received Miranda warnings. Further, neither the fact that defendant was known to be on federal parole nor the fact that around 3:00 a.m. the State Trooper who had interviewed defendant instructed him to stay in the interview room suggests that defendant was in custody earlier.
*699 Also rejected is defendant’s challenge to the sufficiency of the search warrant application, which we find provided sufficient information “ ‘to support a reasonable belief that evidence of a crime may be found in a certain place’ ” (People v German, 251 AD2d 900, 901 [1998], lv denied 92 NY2d 897 [1998], quoting People v McCulloch, 226 AD2d 848, 849 [1996], lv denied 88 NY2d 1070 [1996]). Contrary to defendant’s claims, the affiant investigator was entitled to rely on the personal knowledge of fellow police officers (see People v Telesco, 207 AD2d 920, 920 [1994]) and the Aguilar-Spinelli test is inapplicable as it only applies to “ ‘information supplied by an undisclosed informant’ ” (People v David, 234 AD2d 787, 787-788 [1996], lv denied 89 NY2d 1034 [1997], quoting People v Martinez, 80 NY2d 549, 552 [1992]).
With regard to the trial evidence, defendant’s claim that the jury’s verdict on the weapons possession counts should be reversed is meritless. Defendant’s conviction under count 2 was based upon his actual possession of the loaded .38 caliber revolver, the murder weapon, and indeed, defendant testified to owning such a revolver (see Penal Law § 265.02 [4]). Defendant’s convictions under counts 3 and 4 are supported by the discovery during the execution of the search warrant of a .22 caliber Huger rifle model 1022 and an SKS 7.62 Russian rifle, respectively, concealed in defendant’s home (see Penal Law § 265.01 [4]). In his statement to police, defendant admitted to owning rifles and, at trial, admitted his prior felony convictions and that he owned .22 caliber rifles which his live-in girlfriend had nothing to do with, undermining any claim that he did not exercise dominion and control over them (see People v Kirby, 280 AD2d 775, 779 [2001], lv denied 96 NY2d 920 [2001]; see also Penal Law § 10.00 [8]; People v Manini, 79 NY2d 561 [1992]). We find that the evidence is legally sufficient to support the jury’s verdict on these counts and that the verdict is not against the weight of credible evidence (see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Myers, 265 AD2d 598, 600 [1999]).
Next, defendant contends that a multitude of evidentiary errors deprived him of a fair trial. We disagree. The People’s CPL 710.30 notice provided the sum and substance of defendant’s many statements to police recounted at trial, and a verbatim recitation of every utterance was not required (see People v Steisi, 257 AD2d 582, 582 [1999], lv denied 93 NY2d 979 [1999]; People v Laporte, 184 AD2d 803, 804 [1992], lv denied 80 NY2d 905 [1992]).
We further find no abuse of discretion in County Court’s ruling precluding cross-examination of one of the State Police *700 investigators regarding defendant’s claims that a certain underground group was after him, causing him to fear for his life and justifying his possession of weapons. Defendant himself was allowed to testify at length in support of this duress defense (see Penal Law § 40.00) and the court reasonably concluded that the defense efforts to raise this issue were an otherwise improper attempt to raise the defense of mental disease or defect (see Penal Law § 40.15; see also People v Berk, 88 NY2d 257, 265 [1996], cert denied 519 US 859 [1996]) without having filed notice of intent to do so (see CPL 250.10). Defense counsel expressly stated that the evidence was not a defense to the murder charge and, thus, it did not relate to a defense of extreme emotional disturbance or justification, neither of which was raised by defendant (see Penal Law §§ 35.05, 125.25 [1] [a]).
However, we find merit in defendant’s contention that County Court erred in allowing the People on redirect of one of the State Police investigators to elicit the facts of certain unsolved crimes in a nearby county. While defense counsel had elicited on cross-examination that the investigator had received a call from another State Trooper about defendant concerning unsolved rapes and robberies—as part of the defense theory that defendant, a parolee, was the only suspect in this murder from the outset and not free to leave—it was error for the court to have ruled that defendant “opened the door” to an expanded inquiry, on redirect, regarding the facts of these uncharged violent crimes and the investigation of defendant which followed (see People v Melendez, 55 NY2d 445, 451-453 [1982]; cf. People v Conway, 297 AD2d 398, 399-400 [2002], lv denied 99 NY2d 581 [2003]). The People demonstrated no need to clarify or explain that testimony, and the redirect questioning unnecessarily bolstered the inference that defendant was a suspect in those crimes. However, since the proof of defendant’s guilt is overwhelming and the prejudicial questioning about the crime details was limited, we find that the error was harmless (see People v Crimmins, 36 NY2d 230, 241-242 [1975]). Further, we find no error in the admission of evidence of defendant’s attempted escape as proof of defendant’s consciousness of guilt, which defendant had an opportunity to rebut (see People v Carradero, 227 AD2d 413 [1996], lv denied 88 NY2d 981 [1996]; People v Fama, 212 AD2d 542, 543 [1995], lvs denied 86 NY2d 734 [1995], 87 NY2d 901 [1995]).
With respect to County Court’s charge to the jury regarding the burden of proof, as no objection was raised at trial, defendant’s contentions are unpreserved (see People v Contes, 60 NY2d 620, 621 [1983]). In any event, the court’s charge, *701 viewed as a whole, did not impermissibly shift the burden of proof to defendant. Additionally, the charge did not create the misimpression that the issue of custody was a question of law already decided by the court against defendant, and the court explained to the jury at length that the issue of the voluntariness of defendant’s statements to police was for the jury to decide as a factual matter, including whether he requested an attorney, was in custody or received Miranda warnings (see GPL 60.45, 710.70 [3]).
Finally, we find no error or abuse of discretion in County Court’s imposition of consecutive sentences for intentional second degree murder and possession of the weapon used in the murder (see Penal Law § 70.25 [2]). At trial, the evidence established that defendant admitted that he carried the .38 caliber revolver on his person at all times prior to its seizure. Thus, the crime of possessing a loaded firearm (see Penal Law § 265.02 [4]), while continuous, was completed long before he formed the intent to kill Hurd with this weapon, and shooting him was a discrete act (see Penal Law § 125.25 [1]; People v Salcedo, 92 NY2d 1019, 1021-1022 [1998]; People v Brown, 80 NY2d 361, 364 [1992]; People v Okafore, 72 NY2d 81, 83 [1988]). As the offenses were based on separate and distinct acts (see People v Laureano, 87 NY2d 640, 643 [1996]), consecutive sentencing was authorized and appropriate (see People v Salcedo, supra at 1022; People v McNeil, 273 AD2d 608, 610-611 [2000], lv denied 95 NY2d 868 [2000]; see also Penal Law § 70.25 [2]).
Defendant’s remaining claims have been examined and determined to lack merit.
Crew III, J.P., Peters, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.