■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANGEL TORRES, JR., Appellant. [797 NYS2d 149]—

Carpinello, J. Appeal from a judgment of the County Court of Schenectady County (Tomlinson, J.), rendered June 13, 2003, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree.

Following a jury trial, defendant was found guilty of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. A code-fendant was found not guilty of the same charges. Sentenced as a second felony offender to concurrent prison terms of 8 to 16 years, defendant appeals. We affirm.

Upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *see also* CPL 470.15 [5]). State Police Investigator Fernando Ortega testified that he approached defendant on the steps of a church during the course of a joint buy and bust operation involving the State Police and the City of Schenectady Police Department and asked "if anything was going on." Ortega explained that this phrase was a common way in which one inquires about drugs. When defendant responded in the affirmative, Ortega next asked "what brand it was," explaining that heroin is commonly packaged with a brand name. Defendant advised Ortega of the brand name and instructed him to enter a store two doors down from the church.

According to Ortega, he did as instructed and the two exchanged heroin for $25 cash inside that store. He then immediately returned to his unmarked patrol car, which was parked in front of the church, and informed his partner what had transpired. Ortega's partner corroborated many aspects of Ortega's testimony. Most notably, he identified defendant as being the individual who had conversed with Ortega on the steps of the church and who had entered the store with him. Defendant was arrested within 15 minutes of this transaction at which time both Ortega and his partner identified him. Moreover, $5 of prerecorded buy money was found in his possession at that time. Neither investigator's testimony was seriously assailed during cross-examination.

Next, we find that County Court did not commit reversible error in permitting testimony about an uncharged, second drug sale between Ortega's partner and defendant that day.[1] Evidence of this second sale tended to establish defendant's identity, which was squarely placed at issue at trial. In their *Molineux* proffer, the People requested that they be permitted to present evidence of this second sale to prove, among other *Molineux* factors, defendant's identity. At trial, "mistaken identity" was defendant's sole theory of the case. Indeed, his trial counsel argued this theory in both his opening and closing statements and cross-examined numerous witnesses in an attempt to establish that the police picked up the wrong person. Moreover, in each of the limiting instructions to the jury, County Court advised the jurors that they could consider this second sale as establishing, among other factors, defendant's identity.

Where, as here, identity is contested, evidence of an uncharged, contemporaneous drug transaction can properly be admitted (*see People v Smith*, 5 AD3d 291, 292 [2004], *lv denied* 3 NY3d 648 [2004]; *People v Julius*, 300 AD2d 167, 168 [2002], *lv denied* 99 NY2d 655 [2003]; *People v Lopez*, 279 AD2d 265 [2001], *lv denied* 96 NY2d 785 [2001]; *People v Quinones*, 166 AD2d 330 [1990], *lv denied* 77 NY2d 881 [1991]; *People v Henry*, 166 AD2d 720 [1990], *lv denied* 77 NY2d 907 [1991]). Furthermore, the limiting instructions given to the jury during the course of the trial and also in the final charge prevented any undue prejudice to defendant (*see People v Smith, supra* at 292).

With respect to the concern that County Court failed to engage in a proper balancing analysis before permitting the second sale to be introduced into evidence, we are unpersuaded. During the *Molineux* hearing, the issue of whether this second sale could be introduced into evidence was discussed at length with counsel. County Court reserved its decision on the matter pending testimony at trial. To avoid potential prejudice to defendant or his codefendant, however, the court would not allow the People to allude to the second sale during their opening statement. Moreover, once County Court decided during the course of the trial to permit evidence of the second sale, the court sua sponte presented a proposed limiting instruction to counsel. County Court also would not permit the People to pres-

1. After Ortega made his purchase and returned to the car, his partner approached defendant and solicited him to make another sale for the reduced sum of $20. Following a brief discussion about price, defendant ultimately accepted the partner's $20 and proceeded to drop a second packet of heroin into the car. Neither defendant nor his codefendant was indicted for this second sale.

ent evidence that the substance involved in the second transaction tested positive for heroin.[2] In short, we find that County Court did properly weigh the probative value of the second sale against its prejudicial effect.

Defendant's remaining contentions have been reviewed and are rejected as being without merit.

Cardona, P.J., Crew III and Kane, JJ., concur.

Mugglin, J. (dissenting). I respectfully dissent because, in my view, evidence of criminal conduct by defendant in the uncharged second sale of heroine was completely unnecessary to establish his identity as a participant in the first sale. Defendant wore no disguise and dealt face to face with the undercover officers in broad daylight. An accurate description was radioed by the undercover officers to the back-up team; the undercover officers made a confirmatory identification within minutes after the transaction and made in-court identifications of defendant. Given this overwhelming evidence of identity, even where misidentification is asserted as a defense,* evidence of uncharged criminal conduct has so little probative value on the issue of identity as, in my view, to be inadmissible. In their *Molineux* proffer, the People devoted a mere two sentences (in 14 pages) to the identity issue. The balance of the proffer was the People's argument that the second sale was "pivotal" to complete the narrative of these sales in an attempt to bolster their mostly circumstantial case against the codefendant, Jose Alvarado, by showing that he had two marked $20 bills in his possession and defendant had a marked $5 bill. Moreover, the People candidly admit this evidence was all the more necessary because no drugs were found on Alvarado when he was arrested. Unfortunately, in their unsuccessful attempt to convict Alvarado, this defendant's right to a fair trial was sacrificed. Here, it was imperative that the trial judge make an on-the-record analysis balancing the probative value of this evidence against its prejudicial effect before admitting it pursuant to any *Molineux* exception. An attempt to be fair at the time that the chemical analysis of the drug was admitted comes too late (*see generally People v Foster*, 295 AD2d 110, 112 [2002], *lv denied* 98 NY2d 710 [2002]).

---

2. In ruling on this issue, County Court specifically stated that it "want[ed] to protect the defendant's right not to have to defend against an uncharged crime." It further expounded that it wanted to ensure that the "People are treated fairly without infringing upon defendant's rights."

* While this record does not reveal why the codefendant, Jose Alvarado, was acquitted, it should be noted that originally, the back-up officers picked up an innocent third party, not Alvarado, making misidentification a viable defense for him. In my view, lacking any other viable defense, defendant, in this joint trial, simply asserted that he also had been misidentified.

The prejudice, of course, is manifest. First, unlike a single sale, the second demonstrates a propensity to commit the crime. Second, all juries in criminal trials are advised that, by pleading not guilty, the defendant controverts each element of every count charged in the indictment. No such charge is given with respect to uncharged crimes, leaving defendant with the unpalatable choice of leaving the evidence unrefuted or taking the stand and being subjected to cross-examination. The entire problem created by this case could have been avoided had the District Attorney properly indicted defendant for both sales. Accordingly, I would reverse and remit for a new trial.

Ordered that the judgment is affirmed.