■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RYAN WALLACE, Appellant. [818 NYS2d 684]—

Cardona, P.J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered May 25, 2005, upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the second degree.

Defendant was arrested in May 2004 and charged with a single count of criminal sale of a controlled substance in the second degree after allegedly selling a quantity of cocaine to a confidential informant (hereinafter CI) under the control of federal and state law enforcement. Following a jury trial, defendant was convicted as charged and sentenced to six years to life in prison. He now appeals, challenging certain evidentiary rulings made by County Court and the severity of his sentence.

We begin with the evidentiary issues, specifically, defendant's claim that Drug Enforcement Agent John Rice was erroneously permitted to testify as to prior drug sales allegedly perpetrated by defendant. The circumstances giving rise to that testimony began with defendant's cross-examination of Rice, wherein defense counsel attempted to impugn the credibility of the CI by asking Rice about how the CI came to be an informant and what he had revealed to Rice about his experience in the narcotics trade. After testifying that the CI had been involved in "numerous" drug sales prior to becoming an informant, Rice began to discuss the "debriefing" process that the CI had undergone. In so doing, Rice testified that the CI had claimed to have a supplier named "Juan" whom he had been dealing with for approximately one year. After more details concerning the CI's transactions with Juan were revealed, defense counsel and Rice engaged in the following exchange:

"Q And how about other people? Was [the CI] buying and selling from other people as well?

"A Yes.

"Q [The CI] was a pretty big dealer wasn't he?

"A I don't know if he was a big dealer in the scheme of things but he had other sources of supply for cocaine.

"Q How many other sources of supply for cocaine did he have besides Juan?

"A I believe one.

"Q All right. Now is he buying an ounce or two a week from this other individual?

"A He was buying up to an ounce at the time.

"Q A week?

"A I wouldn't say a week. He was a sub-source. Juan was his main source.

"Q Sub or whatever, getting an ounce a week from this other source, correct?

"A He indicated that when Juan wasn't available he would go to the other source."

Although defense counsel's cross-examination of Rice continued from that point, it did not include further questioning concerning the CI's previous suppliers and, consequently, the topic of the identity of the CI's "sub-source" was carefully avoided by defense counsel. However, following a colloquy between County Court and counsel, the People were permitted to ask Rice, on redirect examination, the name of the CI's subsource. In response, Rice identified defendant as the other source, thereby implicating him in additional, uncharged narcotics sales.

Notably, defendant's involvement with prior narcotics sales with the CI was not a subject of the People's *Sandoval* proffer and said information was also not discussed during the combined *Molineux/Ventimiglia/Sandoval* hearing held in this matter. Nonetheless, the People contend that, inasmuch as defendant "opened the door" to introduction of the evidence at issue, County Court did not abuse its discretion in permitting Rice to identify defendant as the CI's subsource on redirect examination.

Under the particular circumstances herein, we cannot agree. While we appreciate that "[t]he scope of redirect examination falls within the trial court's sound discretion" (*People v Greene*, 13 AD3d 991, 993 [2004], *lv denied* 5 NY3d 789 [2005]; *see People v Massie*, 2 NY3d 179, 183 [2004]), that discretion is not unfettered. Thus, although the People may be entitled to further inquiry to correct or clarify misleading or incomplete testimony brought out on cross-examination by a defendant (*see e.g. People v Mateo*, 2 NY3d 383, 425-427 [2004]; *People v Greene, supra* at 993), " '[b]y simply broaching a new issue on cross-examination, a [defendant] does not thereby run the risk that all evidence, no matter how remote or tangential to the subject matter opened up, will be brought out on redirect' " (*People v Massie, supra* at 183, quoting *People v Melendez*, 55 NY2d 445, 452 [1982]). On the contrary, a "trial court should normally 'exclude all evidence which has not been made necessary by the [defendant's cross-examination]' " (*People v Melendez, supra* at

452, quoting 6 Wigmore, Evidence § 1873, at 672 [emphasis omitted]), particularly where, as here, the subject matter of the People's inquiry concerns prejudicial evidence of prior uncharged criminal acts.

As noted above, the relevant portion of defense counsel's cross-examination of Rice concerned the credibility of the CI and sought to portray him as an upper-echelon narcotics trafficker whose testimony was not to be trusted. Although the cross-examination purposely left one question unanswered— namely, the identity of the CI's second supplier—that omission did not mislead the jury as to a material fact or constitute incomplete testimony requiring remedial action by the People.* In our opinion, the identification of defendant as the CI's subsource was entirely unrelated to the question of the CI's credibility and, accordingly, the People's elicitation of the supplier's identity on the redirect examination of Rice was not warranted (*see People v Ryan*, 17 AD3d 1, 5-6 [2005]; *People v Rivenburgh*, 1 AD3d 696, 700 [2003], *lv denied* 1 NY3d 579 [2003]).

Although County Court attempted to ameliorate the prejudice to defendant via limiting instructions to the jury, inasmuch as the prior bad act evidence here concerned crimes which were essentially identical to the charged offense (*see People v Park*, 12 AD3d 942, 944 [2004]; *see also People v Foster*, 295 AD2d 110, 113 [2002], *lv denied* 98 NY2d 710 [2002]; *cf. People v Sandoval*, 34 NY2d 371, 377-378 [1974]), we cannot conclude that the error herein was harmless beyond a reasonable doubt (*see People v McCalla*, 243 AD2d 819, 819 [1997], *lv denied* 91 NY2d 835 [1997]; *see generally People v Crimmins*, 36 NY2d 230 [1975]). We do not find that the prejudice inherent in revealing defendant's identity as the CI's prior supplier was somehow ameliorated by the fact that the same information was alluded to in the People's direct examination of Rice. In our view, that prior revelation—as well as the People's subsequent reemphasis in summation of defendant's role as a supplier to the CI—simply made it more likely that the jury relied upon the information improperly, notwithstanding the cautionary instructions of County Court (*see generally People v Calabria*, 94 NY2d 519, 523 [2000]). Moreover, we are not persuaded that the evidence

---

* Significantly, inasmuch as defendant's purported prior drug sales to the CI were not the subject of any pretrial *Molineux* or *Sandoval* ruling, defendant's failure to explore the identity of the CI's second supplier on cross-examination cannot be construed as an attempt to wield a favorable court ruling as a sword (*compare People v Mateo, supra* at 425-427; *People v Rojas*, 97 NY2d 32, 34-35 [2001]).

of defendant's guilt was overwhelming. The CI was the only witness to testify as to the particulars of the transaction; however, defendant effectively placed his credibility at issue by highlighting, among other things, the details of his cooperation agreement with police. The various law enforcement witnesses who testified did not directly observe the transaction and, although the CI was wired during the operation, no officers testified concerning what they specifically overheard as the sale allegedly took place. In addition, the tape recording of the events in question was often garbled and the CI was frequently called upon to testify as to his recollection of conversations in order to span inaudible portions of the recording, including the crucial moment when money was purportedly exchanged for the cocaine. Under these circumstances, we conclude that there is a " 'reasonable possibility that the error might have contributed' to defendant's conviction" (*People v Ryan, supra* at 6, quoting *People v Ayala*, 75 NY2d 422, 431 [1990]; *see generally People v Crimmins, supra*).

In light of our disposition, discussion of defendant's remaining contentions is rendered academic.

Mercure, Mugglin and Lahtinen, JJ., concur.

Carpinello, J. (dissenting). I respectfully dissent. While defense counsel's cross-examination of John Rice, an agent with the Drug Enforcement Administration (hereinafter DEA), may not have opened the door for the identification of defendant as the secondary supplier of drugs to the confidential informant, any error was harmless for two reasons, namely, the jury already knew that defendant had previously supplied drugs to the confidential informant (hereinafter CI) and the evidence of guilt was overwhelming (*see e.g. People v Ward*, 10 AD3d 805, 807 [2004], *lv denied* 4 NY3d 768 [2005]; *People v Rivenburgh*, 1 AD3d 696, 700 [2003], *lv denied* 1 NY3d 579 [2003]; *People v Colon*, 307 AD2d 378, 381-382 [2003], *lv denied* 100 NY2d 619 [2003]; *People v Arnold*, 298 AD2d 895 [2002], *lv denied* 99 NY2d 580 [2003]; *People v McCalla*, 243 AD2d 819 [1997], *lv denied* 91 NY2d 835 [1997]).

With respect to the jury's prior knowledge of defendant's status as a supplier, the record reveals that the jury had been specifically informed that both Juan Felix and defendant were drug suppliers to the CI during Rice's *direct* examination. Specifically, the following exchange took place on Rice's direct examination:

"Q Now, tell us who is [defendant]?

"A [Defendant] was someone that [the CI] identified as . . . [1]

"Q You can answer. Continue.

"A [The CI] identified several individuals in the Albany area that he claimed he could purchase cocaine from.

"Q Now, would you tell us how it came to be that [the CI] became a confidential source for the [DEA]?

"A Yes. We were running a separate drug investigation involving an individual by the name of Juan Felix. [The CI] was bringing an informant of ours to Juan Felix to purchase cocaine from Juan Felix. So [the CI] was basically middling a deal between my informant at the time and Juan Felix."

Additionally, on both of the occasions that the People elicited testimony about defendant's prior sale of drugs to the CI, limiting instructions were promptly provided by County Court. Moreover, an additional limiting instruction was given by County Court during its final jury charge. In my view, these instructions prevented any undue prejudice to defendant (*see generally People v Plummer*, 24 AD3d 1027, 1028-1029 [2005], *lv denied* 6 NY3d 837 [2006]; *People v Torres*, 19 AD3d 732, 734 [2005], *lv denied* 5 NY3d 810 [2005]; *see also People v Till*, 87 NY2d 835, 837 [1995]).

Moreover, upon my examination of the record, I find that the evidence of guilt was overwhelming thereby rendering any error on Rice's redirect examination harmless (*see People v Ward, supra; People v Rivenburgh, supra; People v Colon, supra; People v Arnold, supra; People v McCalla, supra*). The CI unequivocally testified that, after being provided a transmitting device and $2,100 in cash from DEA agents, he purchased 1½ ounces of cocaine from defendant on the night in question in exchange for $1,500. Rice and another DEA agent both testified that each overheard the transaction as it unfolded via this monitoring device. Following the transaction, the CI confirmed that he purchased drugs from defendant and handed over the drugs, along with the $600 not utilized in the sale. Moreover, the jury was given the ability to listen to a recording of the transaction

---

1. A hearsay *only* objection was raised by defense counsel at this time. In response to this objection, the prosecutor stated, "Your Honor, it's just background." County Court overruled the objection; however, it gave a limiting instruction to the jury before permitting a full answer by Rice. No other objection was raised and defendant does not take issue on appeal with this precise line of questioning or ruling. Thus, in my view, the issue of the jury being improperly informed that defendant had previously supplied drugs to the CI is in fact unpreserved for review (*see People v Ward, supra*).

independent from the testimony of the DEA agents and the CI.[2] This recording, which is sufficiently audible, confirms that a drug transaction transpired between defendant and the CI. For all these reasons, and because I am unpersuaded by his other contentions on appeal, I believe defendant's conviction should be affirmed.

Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Albany County for a new trial.

(July 27, 2006)

---

2. To this end, headphones were admitted into evidence at trial to permit the jury to better hear the audiotape.