Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered:  July 23, 2015                    106085
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                 MEMORANDUM AND ORDER

MICHAEL A. NICHOLAS,
                        Appellant.
_____


Calendar Date:  May 28, 2015

Before:  Garry, J.P., Egan Jr., Rose and Lynch, JJ.

_____


        Cheryl Coleman, Albany, for appellant.

        J. Anthony Jordan, District Attorney, Fort Edward (Devin J. Anderson of counsel), for respondent.

_____


Lynch, J.

        Appeal from a judgment of the County Court of Washington County (McKeighan, J.), rendered September 6, 2013, upon a verdict convicting defendant of the crimes of criminal sale of controlled substance in the third degree and criminal possession of a controlled substance in the third degree.

        Following his alleged sale of crack cocaine to a confidential informant (hereinafter CI) on October 9, 2012, defendant was charged with criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree.  Defendant was thereafter convicted as charged and sentenced, as a second felony offender, to concurrent prison terms of 12 years, plus three years of postrelease supervision.  Defendant now appeals.

We disagree with defendant's contentions that his convictions were not supported by legally sufficient evidence and were against the weight of the evidence. Defendant primarily maintains that the People failed to prove beyond a reasonable doubt that he was the person who possessed and sold the crack cocaine. He also challenges the CI's credibility.

Scott Gillis, a police detective, testified at trial that defendant became the target of a narcotics investigation following his presence at a September 27, 2012 controlled buy between the CI and another individual at an apartment in the Village of Hudson Falls, Washington County. Thereafter, on October 9, 2012, the CI arranged to purchase crack cocaine from defendant at the same location. After a search of the CI confirmed the absence of contraband, he was provided with $100 of prerecorded buy money, equipped with an audio recording and transmitting device and dropped off by Gillis a few blocks from the residence. Gillis observed the CI walk to the apartment building, although he did not see him enter the residence. According to the CI, defendant and two other men were inside the apartment at the time of the sale. After a coded discussion with defendant about prices of narcotics, the CI gave him the buy money in exchange for a bag of crack cocaine. Gillis was able to contemporaneously listen to the conversation in the residence via the audio device, but he did not witness the transaction, nor was it apparent from the recording that a drug sale had even occurred. The CI then reconvened with Gillis, turned over the bag of crack cocaine and submitted to another search, which revealed no contraband. A lab analysis of the substance in the bag confirmed that it was, in fact, cocaine. Notably, the buy money was never recovered by law enforcement.

A verdict is legally insufficient "where, viewing the record in the light most favorable to the prosecution, there is no valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 349 [2007] [internal quotation marks and citation omitted]). As to defendant's challenge to the weight of the evidence, given that an acquittal would not have been an unreasonable outcome, we must weigh "the relative probative force of conflicting testimony and

the relative strength of conflicting inferences that may be drawn from the testimony while viewing the evidence in a neutral light and giving deference to the jury's credibility determinations" (People v Gibson, 121 AD3d 1416, 1418 [2014], lv denied 24 NY3d 1119 [2015] [internal quotation marks and citation omitted]; see People v Johnson, 91 AD3d 1194, 1196 [2012], lv denied 18 NY3d 995 [2012]).  Here, the only direct evidence of defendant's presence in the apartment at the time of the sale was the testimony of the CI, who not only implicated defendant in the transaction, but also identified his voice at trial during a playback of the audio recording.[1]  Accordingly, the entire case hinged on the CI's credibility.  Although the CI gave testimony that was inconsistent with his grand jury testimony, received compensation for executing the crack cocaine purchase, worked with law enforcement on other controlled buys for approximately five years and had an extensive criminal history, such information was presented to the jury, which clearly credited the CI's testimony (see People v Richards, 124 AD3d 1146, 1147 [2015], lv denied 25 NY3d 992 [2015]; People v Wingo, 103 AD3d 1036, 1037 [2013], lv denied 21 NY3d 1021 [2013]; People v Tisdale, 103 AD3d 987, 988 [2013], lvs denied 21 NY3d 1004, 1010 [2013]).  Thus, we cannot say that the evidence was legally insufficient or that the verdict was against the weight of the evidence (see People v Wingo, 103 AD3d at 1036-1037; People v Jones, 101 AD3d 1241, 1241-1242 [2012], lv denied 21 NY3d 944 [2013]; People v Heaney, 75 AD3d 836, 836 [2010], lv denied 15 NY3d 852 [2010]; People v Miles, 61 AD3d 1118, 1119-1120 [2009], lv denied 12 NY3d 918 [2009]).

However, we find merit in the claim that defendant was deprived of a fair trial due to the cumulative effect of erroneously admitting evidence of prior uncharged crimes and the improper vouching by a witness for the People.  "Evidence of similar uncharged crimes has probative value, but as a general rule it is excluded for policy reasons because it may induce the jury to base a finding of guilt on collateral matters or to convict a defendant because of his [or her] past" (People v

---

[1]  Gillis testified that the CI's voice was the only voice that he could recognize from the audio recording.

Alvino, 71 NY2d 233, 241 [1987]; accord People v Buskey, 45 AD3d 1170, 1172 [2007]; see People v Arafet, 13 NY3d 460, 465 [2009]). However, such evidence "may be admitted where [it] fall[s] within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provide[s] necessary background or complete[s] a witness's narrative" (People v Rivera, 124 AD3d 1070, 1073 [2015] [internal quotation marks and citation omitted]; see People v Morris, 21 NY3d 588, 594 [2013]). "To be inextricably interwoven . . . the evidence must be explanatory of the acts done or words used in the otherwise admissible part of the evidence" (People v Crandall, 67 NY2d 111, 116 [1986]; see People v Ventimiglia, 52 NY2d 350, 361 [1981]). In other words, "it must be 'evidence relating directly to the crime charged' such that 'the value of the evidence clearly outweighs any possible prejudice'" (People v Crandall, 67 NY2d at 116-117, quoting People v Vails, 43 NY2d 364, 368-369 [1977]). Before admitting evidence of prior uncharged crimes, the trial court must determine that its probative value outweighs its prejudicial effect (see People v Till, 87 NY2d 835, 836 [1995]; People v Elmy, 117 AD3d 1183, 1187 [2014]). In short, "under . . . Molineux jurisprudence, we begin with the premise that uncharged crimes are inadmissible and, from there, carve out exceptions" (People v Resek, 3 NY3d 385, 390 [2004]).

In their Molineux proffer, the People sought to introduce evidence of a September 24, 2012 meeting at the apartment among defendant, the CI and others, during which defendant allegedly possessed a handgun and handled numerous bags of crack cocaine. They also included in their application the September 27, 2012 controlled buy at which defendant was present. County Court permitted evidence as to both events, but prohibited evidence as to the handgun and crack cocaine from the September 24, 2012 event on the ground that such testimony would be too prejudicial. The court specifically pointed out that the September 27, 2012 event was not a sale involving defendant. Although the court did not elaborate, this decision reflects the requisite balancing of the probative value of the evidence against its prejudicial effect (see People v Meseck, 52 AD3d 948, 950 [2008], lv denied 11 NY3d 739 [2008]).

At trial, however, the CI testified that defendant was not only present during the September 27, 2012 controlled purchase of crack cocaine, but that he had also participated in the transaction by providing the actual drugs. County Court denied defendant's prompt motion for a mistrial, but otherwise sustained his objection and struck this portion of the CI's testimony, without further limiting instructions to the jury. In our view, this revelation was highly prejudicial, as it related to a recent uncharged crime that was nearly identical to the sale for which defendant was on trial (see People v Wallace, 31 AD3d 1041, 1043-1045 [2006]; People v Foster, 295 AD2d 110, 113 [2002], lv denied 98 NY2d 710 [2002]). Shortly thereafter, the CI recounted that, upon entering the apartment on October 9, 2012, he had observed defendant sitting at a table "with large amounts of heroin and crack cocaine in front of him." Although no reference to "heroin" was included in the People's Molineux proffer, or otherwise previously disclosed, the court overruled defendant's objection, permitting further testimony from the CI about the presence of heroin. Because defendant was not charged with possession or sale of heroin, it cannot be said that this evidence was directly related to or in any way necessary to explain his alleged possession and sale of crack cocaine such that it was inextricably interwoven into the CI's narrative (see People v Crandall, 67 NY2d at 116-117; People v Ventimiglia, 52 NY2d at 361; compare People v Buchanan, 95 AD3d 1433, 1435-1436 [2012], lvs denied 22 NY3d 1039, 1043 [2013]; People v Torres, 19 AD3d 732, 734 [2005], lv dismissed 5 NY3d 810 [2005]). Significantly, the court did not attempt to cure the prejudice arising from the CI's improper testimony by issuing an instruction either at the time of defendant's objection or during the jury charge (compare People v Tinkler, 105 AD3d 1140, 1143 [2013], lv denied 21 NY3d 1020 [2013]; People v Reid, 97 AD3d 1037, 1038 [2012], lv denied 19 NY3d 1104 [2012]; People v Leonard, 83 AD3d 1113, 1117 [2011], affd 19 NY3d 323 [2012]; People v Delaney, 42 AD3d 820, 822 [2007], lv denied 9 NY3d 922 [2007]).[2] Compounding the problem, County Court had earlier

_____

[2]  Notwithstanding defendant's failure to make such a request, County Court should have provided appropriate limiting instructions to the jury (see People v Resek, 3 NY3d at 389;

denied defendant's application to redact that part of the audio recording of the October 9, 2012 event, which referenced the pricing and packaging of "dog food," a code name for heroin. By its ruling, the court was apparently under the erroneous impression that an undercover audio recording of the transaction in issue could not be redacted. Coming at the beginning of the recording, this commentary should have, and easily could have, been redacted.[3]

Further prejudice resulted from the People's redirect examination of Gillis, who stated that the CI was "very reliable and very trustworthy." After County Court overruled defendant's objection, and characterized the testimony as "opinion," Gillis elaborated that the CI had "never given [him a] reason to not believe anything that [the CI] is telling [him]." Allowing Gillis to vouch for the CI's credibility was clearly improper (see People v Guay, 18 NY3d 16, 24 [2011]; People v McClary, 85 AD3d 1622, 1623-1624 [2011]; People v Fredrick, 53 AD3d 1088, 1088-1089 [2008]; see also People v Slaughter, 189 AD2d 157, 160 [1993], lv denied 81 NY2d 1080 [1993]). The effect was compounded by the People's summation, wherein the prosecutor surmised that law enforcement had used the CI for several years because of his reliability (see People v Oathout, 21 NY3d 127, 131 [2013]; People v Casanova, 119 AD3d 976, 978-979 [2014]). While we recognize that County Court sustained defendant's

_____

People v Mitchell, 112 AD3d 1071, 1074 [2013], lv denied 22 NY3d 1140 [2014]).

[3]  The audio recording contained a conversation between defendant and the CI regarding the sale of "dog food," i.e., heroin. Defendant moved to redact those portions of the recording referring to dog food on the basis that the jury would incorrectly infer that the coded language concerned the crack cocaine sale with which defendant was charged. County Court denied defendant's request and the People played the recording in full for the jury, neglecting to explain the term at issue. Defendant was then pressed to bring out the meaning of dog food during his cross-examination of the CI in order to ameliorate any confusion resulting from leaving the term undefined.

objection, no curative instruction was issued, and we remain concerned that the prosecutor's remark amplified the effect of Gillis' improper vouching (see People v Wallace, 31 AD3d at 1044).

In view of the fact that defendant was one of three people who could have sold the crack cocaine to the CI during a transaction that was neither verbalized nor witnessed by anyone but the CI, we cannot say that the proof of defendant's guilt is overwhelming (see id. at 1043-1045), such that the errors at trial may be deemed harmless (see People v Brown, 114 AD3d 1017, 1019-1020 [2014]; People v Parham, 74 AD3d 1237, 1238 [2010], lv denied 15 NY3d 923 [2010]; see generally People v Gillyard, 13 NY3d 351, 357 [2009]). Rather, it is our view that the cumulative effect of these errors deprived defendant of a fair trial (see People v Wlasiuk, 32 AD3d 674, 675 [2006], lv dismissed 7 NY3d 871 [2006]). Accordingly, we must reverse defendant's judgment of conviction and remit for a new trial. In light of this disposition, defendant's remaining contentions have been rendered academic.

Garry, J.P., and Rose, J., concur.


Egan Jr., J. (concurring).

I agree that the cumulative errors identified by the majority warrant reversal of defendant's conviction and the remittal of this matter for a new trial. Where the majority and I part company, however, is with respect to the evidence relative to defendant's alleged possession of heroin. To my analysis, this uncharged criminal activity falls squarely within one or more of the recognized Molineux exceptions. Here, the confidential informant (hereinafter CI) testified that, upon entering the apartment on the day in question, he observed defendant "sitting at the table with large amounts of heroin and crack cocaine in front of him." Such testimony, in my view, was part and parcel of the CI's attempt to set the scene and provide context for the October 9, 2012 transaction, thereby providing necessary background information and/or completing the CI's narrative (see People v Rivera, 124 AD3d 1070, 1073 [2015]).

Hence, step one of the <u>Molineux</u> test was satisfied.

Although I agree that, under the particular facts of this case, the probative value of such evidence was outweighed by its prejudicial effect, thereby warranting the exclusion thereof, I write separately to make clear that not every casual, off-the-cuff reference to an uncharged crime constitutes reversible error. For example, it would be neither unusual nor surprising if, during the course of a controlled buy, a CI or an undercover officer observed additional evidence of criminal activity beyond that with which a particular defendant ultimately was charged. Although any testimony relative to such uncharged criminal activity indeed should be part of the People's <u>Molineux</u> application and must satisfy that two-part test in order to be admitted into evidence at trial, not every fleeting or isolated reference to uncharged criminal activity constitutes a <u>Molineux</u> violation, nor does the mere mention of an uncharged crime necessarily afford a basis upon which to reverse an otherwise valid conviction. And, to the extent that the majority's decision suggests otherwise, I disagree.

ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Washington County for a new trial.

ENTER:

Robert D. Mayberger
Clerk of the Court