■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDGARDO E. DEVICTOR-LOPEZ, Appellant. [66 NYS3d 346]—

McCarthy, J.P. Appeal from a judgment of the County Court of Montgomery County (Catena, J.), rendered January 31, 2014, upon a verdict convicting defendant of the crimes of burglary in the first degree, menacing in the first degree, criminal possession of a weapon in the third degree, unlawful imprisonment in the second degree, coercion in the second degree and harassment in the second degree.

Defendant entered the apartment of his former girlfriend (hereinafter the victim), hit her, threatened her with a box cutter and refused to allow her to leave for several hours. As a result, he was convicted after trial of burglary in the first degree, menacing in the first degree, criminal possession of a weapon in the third degree, unlawful imprisonment in the second degree, coercion in the second degree and harassment in the second degree. County Court imposed a prison term of 12 years with five years of postrelease supervision for defendant's burglary conviction and shorter concurrent terms on the other convictions. Defendant appeals.

The verdict is not against the weight of the evidence. "Where, as here, a different verdict would not have been unreasonable, we weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Scippio*, 144 AD3d 1184, 1185 [2016] [internal quotation marks and citations omitted], *lv denied* 28 NY3d 1150 [2017]). Defendant challenges only his conviction of burglary in the first degree. For that charge, the People were required to prove that defendant "knowingly enter[ed] or remain[ed] unlawfully in a dwelling with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another participant in the crime . . . [u]se[d] or threaten[ed] the immediate use of a dangerous instrument" (Penal Law § 140.30 [3]). Although defendant testified—in direct contradiction of the victim's testimony—that the incident simply did not occur, he now focuses on the element of unlawfully entering, asserting that he was lawfully present because he lived in the apartment. Defendant testified that he moved into the victim's apartment a few days after they began their relationship, and he lived there every day until this incident. He testified that the victim gave him two keys to the front doors, he kept his clothing and personal papers there and he received mail at that address. On cross-examination, the People elicited that the pedigree section of the police report completed in connection with defendant's arrest on these charges listed an address for defendant that was not the victim's apartment.

The victim testified that defendant stayed at her apartment three to five nights per week while they were together. According to her, they were still talking at the time of the incident, but they had not been together for a few weeks. She testified that she never asked defendant to live in her apartment, put his name on the lease or gave him a key. She further testified that he used the address to receive some important mail because her mailbox had a lock, but he did not receive all of his mail there. He left some clothing at her house, but he normally brought a bag with his clothing and personal items if he planned to stay over.

The victim testified that when she returned home on the night of the incident, she did not see anyone in the house, and the doors were locked before she went to sleep; the front door was still locked when she finally tried to escape from the apartment. Contrary to defendant's testimony that the bathroom window lock was operational, the victim and two police officers testified that the lock did not work and the window could not

be securely shut. A wooden pallet was discovered against the house underneath that window, and handprints on the outside of the glass indicated that it had been pushed up. Viewed in a neutral light and giving deference to the jury's credibility determinations, the evidence supports the findings that defendant did not live in the victim's apartment at the time of the incident, he entered through the bathroom window while she was asleep, with the intent to commit a crime, and he threatened use of a dangerous instrument while in the dwelling (*see People v Cooley*, 149 AD3d 1268, 1269-1270 [2017], *lv denied* 30 NY3d 979 [2017]; *People v Davis*, 105 AD3d 1095, 1096-1097 [2013], *lv denied* 21 NY3d 1003 [2013]). Thus, the conviction for burglary in the first degree is not against the weight of the evidence (*see People v Lewis*, 99 AD3d 1104, 1104 [2012], *lv denied* 21 NY3d 1017 [2013]).

Defendant contends that he was denied the effective assistance of counsel because counsel failed to object during summation,* failed to request any hearings regarding the tape of the victim's 911 call, agreed to proceed without defendant being present, provided a cursory opening statement and made various mistakes during his summation. "A defendant's right to the effective assistance of counsel will be satisfied so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (*People v Muriel*, 75 AD3d 908, 911 [2010] [internal quotation marks and citations omitted], *lv denied* 15 NY3d 922 [2010]). In summation, the prosecutor stated several times that he thought defendant's testimony contained lies and was "completely false," whereas he thought the victim gave an accurate and honest account of what happened. This was not a situation where the prosecutor misrepresented the evidence, encouraged the jury to find guilt based on facts not in evidence or improperly shifted the burden of proof (*compare People v Wright*, 25 NY3d 769, 780-781 [2015]; *People v Fisher*, 18 NY3d 964, 966-967 [2012]; *People v Wright*, 133 AD3d 1097, 1097-1098 [2015]). Although "a prosecutor may not express personal opinions concerning the credibility of witnesses who testify at trial" and should not refer to a defendant's testimony as "lies," reversal is generally required based on such statements only

---

* By not objecting during the prosecutor's summation, counsel failed to preserve defendant's argument that the prosecutor's improper comments deprived him of a fair trial (*see People v Scippio*, 144 AD3d at 1187). We will not address this unpreserved argument in its own right, but only to see if the failure to object constituted or contributed to any alleged ineffectiveness by counsel.

"if the conduct has caused substantial prejudice to the defendant so that he [or she] has been denied due process of law" (*People v Russell*, 307 AD2d 385, 386 [2003] [internal quotation marks and citation omitted]).

While the prosecutor here should not have expressed his personal thoughts, used the phrase "I think" when discussing defendant's or the victim's testimony or stated that defendant's testimony "was all a lie" (*see id.*), it was not necessarily improper for him to comment on witness credibility by asking the jury to question whether defendant was telling the truth and to assert that the victim gave an accurate account to the best of her ability considering the passage of time. In any event, the prosecutor's improper comments were confined to one section of his summation, rather than dispersed throughout, and County Court instructed the jury both before and after summations that what the lawyers said was not evidence and the jury alone was responsible for finding facts. Because "the record as a whole fails to disclose that the prosecutor engaged in a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive defendant of a fair trial" (*People v Green*, 119 AD3d 23, 30 [2014] [internal quotation marks, brackets and citations omitted], *lv denied* 23 NY3d 1062 [2014]; *see People v Fiorino*, 130 AD3d 1376, 1380 [2015], *lv denied* 26 NY3d 1087 [2015]), counsel's failure to object to the summation did not deprive defendant of effective assistance.

Counsel was not ineffective for failing to request suppression or audibility hearings regarding the 911 tape. Even without a motion, County Court stated that it would determine if there was an audibility issue, so the failure to request such a hearing was irrelevant. Moreover, counsel may have strategically determined that such motions would not have been successful; indeed, defendant does not explain how they would have been. Instead, counsel attacked the tape on summation, arguing that it was unclear what was occurring, no one identified themselves on the tape, and the evidence did not prove that it came from the victim's phone or residence.

Defendant complains that counsel agreed to proceed without him when he was not on time for the first day of trial. County Court had previously issued *Parker* warnings and indicated that it intended to proceed in defendant's absence because he lacked a legitimate reason for being late. While counsel could have requested an adjournment, it appears unlikely that the court would have granted one. Defendant arrived while jury selection was ongoing, and he was present for the remainder of the trial. Separately, defendant faults counsel for failing to

argue against his remand during trial, but defendant asserted that transportation problems prevented him from appearing in court until after noon each day, and he offered no assurance that he would appear on time. His incarceration for those two nights permitted him to timely appear for trial thereafter.

Though defense counsel chose to make a short opening statement, he was not required to make one at all (see CPL 260.30 [4]; compare CPL 260.30 [3]). Counsel asserted to the jury that the People's explanation of the evidence would not be borne out, and when it heard how the events really occurred, it would have reasonable doubt and be required to return a verdict of not guilty. While counsel could have presented a longer or more powerful opening statement, he was not ineffective for failing to do so. Similarly, while counsel's summation was short, he argued that reasonable doubt existed, the victim did not have substantial injuries and waited more than an hour before going to the hospital, no box cutter was located and only the victim testified to its existence, the 911 call did not establish anything, and defendant did not have a motive to commit these crimes. Despite defendant's contention that counsel failed to argue that he lived with the victim, counsel did state during his summation that defendant lived in the apartment and had a key.

A defendant is not entitled to perfect or error-free representation. Considering counsel's representation as a whole—including engaging in relevant motion practice and effectively cross-examining witnesses, and despite defendant's refusal at times to communicate with counsel or accept his advice—counsel provided effective assistance to defendant (see People v Goldston, 126 AD3d 1175, 1179 [2015], lv denied 25 NY3d 1201 [2015]; People v Fulwood, 86 AD3d 809, 811 [2011], lv denied 17 NY3d 952 [2011]).

County Court indicated, when imposing a sentence that was less than half the maximum permitted, that it considered defendant's young age, upbringing and personal problems, but also the violent nature of these crimes and his criminal history. The court did not abuse its discretion during sentencing, nor are any extraordinary circumstances present that would warrant a reduction of the sentence in the interest of justice (see People v McGowan, 149 AD3d 1161, 1163 [2017], lv denied 29 NY3d 999 [2017]).

Lynch, Devine, Clark and Pritzker, JJ., concur. Ordered that the judgment is affirmed.