People v Johnson (2019 NY Slip Op 07646)





People v Johnson


2019 NY Slip Op 07646


Decided on October 24, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 24, 2019

108412

[*1]The People of the State of New York, Respondent,
v
Jamel Johnson, Also Known as Mel, Appellant.

Calendar Date: September 9, 2019

Before: Lynch, J.P., Clark, Devine and Pritzker, JJ.


Matthew C. Hug, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



Lynch, J.P.
Appeal from a judgment of the Supreme Court (Coccoma, J.), rendered February 16, 2016 in Schenectady County, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal possession of a weapon in the second degree (two counts) and criminal possession of a weapon in the third degree.
On October 27, 2012, at around 4:00 a.m., the victim was fatally shot at close range in front of multiple people outside a bar in the City of Schenectady, Schenectady County. In connection with the shooting, defendant was indicted in July 2014 on charges of murder in the second degree, two counts of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. Following a jury trial in December 2015, defendant was convicted as charged and sentenced to a prison term of 25 years to life on the murder conviction and to lesser concurrent prison terms on the remaining convictions. Defendant appeals.
Defendant maintains that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence because the witness testimony identifying him as the shooter was incredible as a matter of law and there was no physical evidence connecting him to the crime. The trial testimony showed that defendant was assaulted inside a store on September 13, 2012 by a group of men, including the victim. One witness testified that defendant exited the store and exclaimed that he was "gonna kill" the men who had beaten him. Defendant told his girlfriend that the victim was one of his assailants, who struck defendant in the face with a gun, and that defendant would retaliate by killing the victim.
On the morning of the fatal shooting, the victim was shot moments after exiting the bar by an assailant wearing a hooded sweatshirt. Four separate witnesses all identified defendant as the shooter. Two of these identification witnesses testified that defendant came out from behind an exterior staircase as the victim came out of the bar and then shot the victim at close range. Two of the four witnesses testified that they observed defendant place his arm around the victim before shooting him, and three of the four witnesses testified that defendant fired several shots at the victim after he had fallen to the ground. A fifth witness testified that he saw a person wearing a hooded sweatshirt come out from behind the exterior staircase, followed by "six [or] seven" flashes and "loud pops." A sixth witness testified that she heard three shots and felt the victim fall against her leg. She turned to run and collided with a man in a hooded sweatshirt, who was holding a gun.
Taken at face value, this cumulative testimony provides abundant support for the jury's verdict, particularly given defendant's motivation to avenge his assault six weeks earlier. As to defendant's argument, testimony is incredible as a matter of law if it is inherently unworthy of belief because it is "manifestly untrue, physically impossible or contrary to human experience" (People v Toland, 2 AD3d 1053, 1055 [2003] [internal quotation marks and citation omitted], lv denied 2 NY3d 808 [2004]; see People v Werkheiser, 171 AD3d 1297, 1301 [2019], lv denied 33 NY3d 1109 [2019]; People v Myers, 163 AD3d 1152, 1154 [2018], lv denied 32 NY3d 1066 [2018]). Although each of the four identification witnesses had a criminal history and had entered into cooperation agreements with the People, and there were certain inconsistencies in their testimony, these circumstances do not render their testimony incredible as a matter of law (see People v Wingo, 103 AD3d 1036, 1037 [2013], lv denied 21 NY3d 1021 [2013]; People v Callicut, 101 AD3d 1256, 1259 [2012], lvs denied 20 NY3d 1096, 1097 [2013]). The jury was made aware of such circumstances when assessing the credibility of the witnesses (see People v Mamadou, 172 AD3d 1524, 1525 [2019], lv denied 33 NY3d 1106 [2019]; People v Magee, 135 AD3d 1176, 1180 [2016]; People v Nicholas, 130 AD3d 1314, 1315 [2015]). There were also significant, consistent factors in the witnesses' testimony, i.e., that defendant came out from behind the exterior staircase, that he put his arm around the victim before shooting him and that he continued to fire multiple shots even after the victim had fallen to the ground. This proof, when viewed in the light most favorable to the People, was legally sufficient to support the verdict in all respects (see People v Pratt, 162 AD3d 1202, 1202-1203 [2018], lv denied 32 NY3d 940 [2018]; People v Hamilton, 127 AD3d 1243, 1244-1245 [2015], lv denied 25 NY3d 1164 [2015]). Moreover, viewing the evidence in a neutral light and giving due deference to the jury's credibility assessments, we find that the verdict was not against the weight of the evidence (see People v Lebron, 166 AD3d 1069, 1073 [2018], lv denied 32 NY3d 1174 [2019]).
We are not persuaded by defendant's contention that the pretrial identification procedures and photo arrays were unduly suggestive because the photos were dissimilar to defendant and the arrays were labeled "Mason Club Perp," referring to the bar where the incident occurred. "[A] photo array is unduly suggestive if it depicts a unique characteristic which draws the viewer's attention so as to indicate that the police have selected a particular individual" (People v Smith, 122 AD3d 1162, 1163 [2014] [internal quotation marks and citation omitted]). Although the initial burden to show the reasonableness of the police conduct and the lack of undue suggestiveness rests with the People, once satisfied, the defendant bears the ultimate burden of proving that the procedures were unduly suggestive (see People v Delamota, 18 NY3d 107, 118 [2011]; People v Chipp, 75 NY2d 327, 335 [1990]).
Following the Wade hearing, the Judicial Hearing Officer, whose recommendations and report were adopted and confirmed by Supreme Court, found that the array administered to an identification witness on September 30, 2013 and again on October 3, 2013, as well as the array shown to another identification witness on October 23, 2013, were not unduly suggestive. We agree. Despite some discrepancies between the appearance of defendant and the others depicted in the arrays, nothing singled out defendant as the suspect (see People v Serrano, 173 AD3d 1484, 1486-1487 [2019], lvs denied ___ NY3d ___, ___ [Aug. 12, 2019]; People v Quintana, 159 AD3d 1122, 1127 [2018], lv denied 31 NY3d 1086 [2018]). We are mindful that one of the witnesses, upon viewing the photo array on September 30, 2013, identified a different person as the shooter. However, in a monitored phone call that she made to a third party from jail, that witness admitted that she was not being truthful in identifying the other person and that she actually recognized defendant as the shooter. The police so informed this witness's counsel and, when shown the same array on October 3, 2013, the witness identified defendant. Under these circumstances, we find that the police acted reasonably and that the procedure was not unduly suggestive.
Next, defendant maintains that Supreme Court erred in allowing the People to introduce evidence of a prior consistent statement made by one of the identification witnesses. During her direct testimony, this particular witness testified that, when the shooting occurred, she ran toward Paige Street but could not remember in which direction the shooter fled the scene. On cross-examination, this witness acknowledged that she gave a statement to the police four days after her October 2013 arrest on a forgery charge, wherein she indicated that the shooter ran in the same direction that she did. On redirect, the People, over defendant's objection, endeavored to rehabilitate this witness by utilizing her grand jury testimony from July 2014, in which she testified that she was uncertain in which direction the shooter ran, but believed that it was away from her — towards Schenectady Street. Defendant maintains that this was improper bolstering.
"A witness'[s] trial testimony ordinarily may not be bolstered with pretrial statements" (People v McDaniel, 81 NY2d 10, 16 [1993] [citations omitted]). Prior consistent statements, however, may be used to rebut a claim of recent fabrication to the extent that such a statement predated the motive to falsify (see id. at 18). In his brief, defendant asserts that he did not challenge the identification witness's testimony as a recent fabrication, but only utilized the October 2013 statement to show the inconsistency in her explanations as to how the shooter fled the scene. We recognize that "not every inconsistency developed on cross-examination implies that the witness'[s] testimony is perjurious. Mere impeachment by proof of inconsistent statements does not constitute a charge that the witness'[s] testimony is a fabrication" (id. [internal quotation marks and citations omitted]).
Accepting that premise, we would agree that Supreme Court erred in allowing the People to utilize the identification witness's grand jury testimony on redirect. We do, however, recognize that her statement to the police came a year after the shooting and only days after her arrest on a felony. She also entered into a cooperation agreement prior to her grand jury testimony, which agreement was later amended after she was arrested on new charges in April 2015. Even if we were to treat the cross-examination of the identification witness as implicitly suggesting a recent fabrication, we cannot agree with the People's assertion that her grand jury testimony predated her motive to testify. Either way, we conclude that Supreme Court erred in allowing the People to utilize her grand jury testimony. That said, given that the admission of bolstering testimony constitutes nonconstitutional error (see People v Johnson, 57 NY2d 969, 970 [1982]), we find that the error is harmless and there is not a significant probability that the jury would have acquitted defendant but for this error (see People v Crimmins, 36 NY2d 230, 242 [1975]). The inconsistency speaks to which direction the shooter dispersed during what was described as a chaotic scene, not to the key issue of identification. As recited above, four witnesses identified defendant as the shooter. As such, we find that the error here is of no moment.
We also find defendant's remaining contentions unavailing. The prosecutor's brief commentary implying that defendant had some obligation to provide an innocent explanation for a witness's testimony, taken in context of the entire summation, did not reflect "a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive defendant of a fair trial" (People v Devictor-Lopez, 155 AD3d 1434, 1437 [2017] [internal quotation marks and citations omitted]; see People v Shamsuddin, 167 AD3d 1334, 1336 [2018], lv denied 33 NY3d 953 [2019]). As defendant failed to lay a proper foundation for the use of a police officer's notes, Supreme Court did not err in limiting defendant's cross-examination of an identification witness as to statements attributed to her in those notes (see People v Maxam, 135 AD3d 1160, 1161-1162 [2016], lv denied 27 NY3d 1135 [2016]). Nor did the court err in denying defendant's motion for a mistrial. The motion was prompted after the People inquired of an identification witness, "[W]hat if any efforts have there been to convince you not to come to court and testify in this murder trial?" The court sustained defendant's objection to what was an improper question and gave a thorough and appropriate curative instruction to the jury (see People v Silver, 168 AD3d 1225, 1227 [2019], lv denied 33 NY3d 954 [2019]; People v Turcotte, 124 AD3d 1082, 1083-1084 [2015], lv denied 25 NY3d 1078 [2015]). Finally, defendant's contention that the sentence is harsh and excessive is not persuasive.
Clark, Devine and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.