## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  January 21, 2016                106597
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

          v                              MEMORANDUM AND ORDER

MAURICE MAGEE,
                    Appellant.
_____


Calendar Date:  November 24, 2015

Before:  Garry, J.P., Rose, Lynch, Devine and Clark, JJ.

_____


        Brian M. Quinn, Albany, for appellant.

        Kathleen B. Hogan, District Attorney, Lake George (Matthew
D. Burin of counsel), for respondent.

_____


Lynch, J.

        Appeal from a judgment of the County Court of Warren County
(Hall Jr., J.), rendered January 8, 2014, upon a verdict
convicting defendant of the crime of criminal sale of a
controlled substance in the second degree.

        Defendant and Gerald Colombe were charged in an indictment
with criminal sale of a controlled substance in the second
degree, attempted criminal sale of a controlled substance in the
second degree and conspiracy in the second degree after an
incident in May 2013 during which Colombe offered to sell cocaine
to Anthony Bruno, an undercover investigator with the Warren
County Sheriff's Office, in the parking lot of a Walmart.
Colombe pleaded guilty, absconded and was returned to Warren
County in time to testify against defendant at the end of the

trial.  The jury found defendant guilty of criminal sale of a controlled substance in the second degree.[1]  He was thereafter sentenced, as a second felony drug offender, to a prison term of 12 years, with five years of postrelease supervision.  Defendant appeals.

Defendant first maintains that his conviction was not supported by legally sufficient evidence establishing that he "knowingly and unlawfully" participated in Colombe's offer to sell the cocaine to Bruno (Penal Law § 220.41 [1]; see Penal Law § 220.00 [1]).  "A conviction is legally insufficient where, viewing the record in the light most favorable to the prosecution, there is no valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Maldonado, 24 NY3d 48, 53 [2014] [internal quotation marks and citations omitted]).  It is established that "[a] conviction for criminal sale does not require that an actual sale be consummated; under Penal Law § 220.00 (1), a 'sale' includes an offer to sell or exchange drugs.  However, in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell — i.e., that defendant had both intent and the ability to proceed with the sale" (People v Mike, 92 NY2d 996, 998 [1998] [citations omitted]; see People v Samuels, 99 NY2d 20, 23-24 [2002]; People v Vargas, 72 AD3d 1114, 1117 [2010], lv denied 15 NY3d 758 [2010]; People v Crampton, 45 AD3d 1180, 1181 [2007], lv denied 10 NY3d 861 [2008]).  Intent necessarily is determined by a defendant's statements and conduct (see People v Samuels, 99 NY2d at 24).  Also pertinent here is that "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]).

---

[1]  While defendant moved prior to opening statements to dismiss the conspiracy count as jurisdictionally defective, County Court did not grant the motion until just prior to Colombe's testimony, on consent of the People.

The event was partially captured through audio and video recording devices utilized by Bruno, who prearranged the sale with Colombe, as well as footage from Walmart's security cameras. After parking his vehicle, Bruno walked to defendant's nearby car, opened the rear passenger door and sat in the back seat. Colombe was in the front passenger seat and defendant was behind the wheel. A conversation ensued between Colombe and Bruno, as Bruno handed $1,050 in cash to Colombe. Simultaneously, defendant began to drive the car toward the Walmart entrance. Colombe counted the money out loud and appeared to try to hand the money to defendant, who simply continued to drive without speaking. Moments later, defendant stopped the car, got out and entered the store. Shortly thereafter, defendant returned to the car, tapped the window and walked back into the store followed by Colombe. At this point, Bruno communicated to the backup officers that he recognized defendant and suspected that his cover was blown. Colombe returned to the car, opened the front passenger door, peered in and directly asked Bruno whether he was a police officer. At this point, defendant remained in the entranceway looking out towards his car. After a brief exchange, Colombe instructed Bruno to walk back to his own car where they would complete the transaction. Moments after defendant got back in the car, Bruno got out. As Bruno approached his own car, Colombe was walking away, having placed the $1,050 under the windshield. Colombe and defendant then sped away in defendant's car and were eventually apprehended by the pursuing officers. Two baggies of cocaine were found along the roadway and a witness testified that he saw the passenger throw two white objects out of the window as the vehicle sped by. Forensics established that the bags contained 17 grams of cocaine.

Colombe testified that he contacted defendant to supply the cocaine for the sale to Bruno. He explained that the money would go to defendant, and that his take was to receive seven grams of cocaine from defendant. Asserting that defendant would not trust him with handling the cocaine, Colombe utilized defendant's cell phone to call Bruno and change the plan by having Bruno come into defendant's car. Colombe testified that he counted the money out loud for defendant's sake and, upon confirming that Bruno paid the required amount, stated, "Maurice it's a wrap." When asked to explain his actions in the video, Colombe stated that he said

"here" and that he "tried to hand [defendant] the money." Colombe further explained that he did not know why defendant did not take the money, or why he left the car. Colombe testified that when he exited the car in response to defendant's tap on the window, defendant advised him that Bruno was a police officer and told Colombe to get Bruno out of the car and put the money on Bruno's windshield. During what Colombe described as a "high speed chase," he stated that defendant took the cocaine out of his pocket and told Colombe to throw it out the passenger window. Colombe complied.

For his part, Bruno testified that the sale was prearranged with Colombe and that, shortly before they were to meet, Colombe called on defendant's cell phone to instruct Bruno to get in the back seat of defendant's car. Bruno explained that right after he handed the money to Colombe, he made eye contact with defendant through the rearview mirror and recognized defendant from prior dealings. Bruno testified that after the money was counted, he heard Colombe ask defendant "if he was basically trying to get away from the cameras," to which defendant responded "yeah, just a minute . . . I will be right back." Bruno testified that when defendant returned to the car, Colombe said, before exiting, that "he is going to hand it to me. He doesn't know you."

Without question, Colombe fully implicated defendant as the moving force behind this transaction. The further question is whether there is corroborating evidence to show that defendant acted with the intent to pursue the sale. Clearly, defendant was present in the car with Colombe when Bruno entered the back seat. Colombe also used defendant's cell phone to change the transaction format shortly before Bruno arrived. Since the record shows that Colombe did not have either a car or a phone, a jury could readily infer that defendant drove Colombe to the meeting place and allowed Colombe to use his phone (compare People v Lanza, 57 NY2d 807 [1982]). That said, there is no evidence that defendant was involved in the preliminary conversations between Colombe and Bruno setting up the sale. Nor did defendant in any way interact with Bruno or Colombe while in the car during the money exchange. The video actually shows that defendant immediately began to drive after Bruno entered the car

and neither touched the money nor uttered a single word related to the transaction.  Defendant exited the car within a minute, but his reasons for doing so may readily be explained by Bruno's testimony that they made eye contact and knew each other.  Given this sequence, a jury could also readily infer that defendant informed Colombe that Bruno was a police officer based on defendant's own actions in waiting back and observing Colombe return to the car and Colombe's direct confrontation with Bruno as to whether he was a police officer.  Not to be overlooked is that defendant drove Colombe back to the initial meeting area, waited for Colombe to place the money on Bruno's windshield and then took off at a high rate of speed.

Viewing this evidence in a light most favorable to the People, we find that a jury could validly conclude that defendant intended to proceed with the sale and only terminated the sale after recognizing Bruno.  We therefore find that the evidence was legally sufficient to prove the element of intent (compare People v Samuels, 99 NY2d at 23-24; People v Mike, 92 NY2d at 998; People v Vargas, 72 AD3d at 1117; People v Crampton, 45 AD3d at 1181).  Moreover, viewing this proof in a neutral light and according deference to the credibility determinations of the jury, we do not find the verdict was against the weight of the evidence (see People v Reome, 15 NY3d 188, 191-192 [2010]; People v Cruz, 131 AD3d 724, 725 [2015]).  The jury was aware of the favorable plea agreement that Colombe negotiated, that he admittedly used drugs prior to the transaction and of his criminal background, and it could utilize its collective judgment to assess his credibility (see People v Nicholas, 130 AD3d 1314, 1315 [2015]; People v Richards, 124 AD3d 1146, 1147 [2015], lv denied 25 NY3d 992 [2015]; People v Wingo, 103 AD3d 1036, 1037 [2013], lv denied 21 NY3d 1021 [2013]).

We further reject defendant's contention that his cell phone was illegally searched and seized based on a delayed warrant.  Generally, police must obtain a warrant before searching the contents of a cell phone seized from an individual who has been arrested (see Riley v California, ___ US ___, ___, 134 S Ct 2473, 2493-2494 [2014]).  Here, the People procured a search warrant on September 24, 2013, allowing full access to defendant's cell phone and data pertinent to the use of the phone

during the commission of the underlying crime.  At the time the warrant was signed, the cell phone was being held as part of defendant's personal property at the Warren County Correctional Facility.  In our view, the warrant sufficiently narrowed the search (see United States v Ganias, 755 F3d 125, 134-135 [2d Cir 2014], rearg en banc granted 791 F3d 290 [2015]; United States v Galpin, 720 F3d 436, 445-446 [2d Cir 2013]).  While the warrant was issued four months after defendant's arrest, the delay did not render the search unreasonable (see United States v Christie, 717 F3d 1156, 1162-1163 [10th Cir 2013]; United States v Stabile, 633 F3d 219, 235-236 [3d Cir 2011], cert denied ___ US ___, 132 S Ct 399 [2011]).  In any event, while the entire media content of the cell phone was admitted into evidence, only a few text messages relating to defendant's financial condition were actually presented to the jury.  There is no indication in this record that any of the potentially inflammatory images and videos included on the disc containing the phone content were shown to the jury.

We do, however, find merit to defendant's claim that he was deprived of a fair trial due to the erroneous admission of evidence indicative of prior illegal behavior.  The focus here is on the testimony of defendant's acquaintance, Taylor Aubin, who described a trip she took with defendant to New York City in April 2013.  They arrived at about 11:30 p.m. and met a person named Ty and his girlfriend on a sidewalk.  After a brief conversation, the four drove in defendant's car to a nearby building.  Defendant then had Aubin count $6,000 in cash, which he handed over to Ty.  Ty went into a building and returned to the car about 45 minutes later.  Ty then drove the group to his house, where defendant and Aubin stayed for a brief period and then left to return home, arriving at about 6:00 a.m.  Aubin also testified how defendant later complained that Ty was bothering him to repay a debt, that he was not working and that he needed money to pay a lawyer.  She also loaned defendant $670 and was repaid $600.

The stated purpose of this testimony was to demonstrate that defendant had a financial motive for the cocaine sale to Bruno.  Evidence of prior bad acts or uncharged crimes may be admissible to show motive to commit a crime under one of the

traditional Molineux exceptions – where the probative value exceeds its prejudicial effect (see People v Molineux, 168 NY 264, 293 [1901]).  That said, "there is usually no issue of motive in a drug sale case, as the seller's motivation is nearly always financial gain" (People v Wilkinson, 71 AD3d 249, 255 [2010]; see generally People v Alvino, 71 NY2d 233, 242-243 [1987]).  Moreover, "evidence of similar uncharged crimes has probative value, but as a general rule it is excluded for policy reasons because it may induce the jury to base a finding of guilt on collateral matters or to convict a defendant because of his [or her] past" (People v Alvino, 71 NY2d at 241; see People v Nicholas, 130 AD3d 1314, 1316 [2015]).  The Aubin story is highly suggestive of an illicit drug transaction, and it is difficult to discern any relevant impact other than to show defendant's criminal propensity.  As this case largely turned on Colombe's credibility, we cannot characterize the error in admitting this evidence as harmless, notwithstanding County Court's curative instruction (see People v Gray, 125 AD3d 1107, 1109 [2015]; People v Allen, 13 AD3d 892, 894 [2004], lv denied 4 NY3d 883 [2005]).  Accordingly, we must reverse defendant's judgment of conviction and remit for a new trial.  Given this outcome, defendant's remaining contentions have been rendered academic.

     Garry, J.P., Rose, Devine and Clark, JJ., concur.

     ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Warren County for a new trial.

ENTER:

*Robert D Mayberger*

Robert D. Mayberger
Clerk of the Court