■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERRENCE GETHERS, Appellant. [58 NYS3d 640]—

Clark, J. Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered May 19, 2015, upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the second degree (three counts).

In March 2014, defendant was indicted on three counts of criminal sale of a controlled substance in the second degree, stemming from three occasions when he offered to sell more than one half of an ounce of crack cocaine to a confidential informant (hereinafter CI) during separate controlled buy operations. Following a jury trial, defendant was convicted as charged, and County Court sentenced him, as a second felony drug offender, to three concurrent prison terms of 10 years, followed by five years of postrelease supervision. Defendant appeals, and we affirm.

Defendant argues that the verdict is unsupported by legally sufficient evidence and is against the weight of the evidence. A challenge to the legal sufficiency of the evidence supporting a guilty verdict requires this Court to view the evidence in the light most favorable to the People and to evaluate "whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every ele-

ment of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [citation omitted]; *see People v Lynch*, 95 NY2d 243, 247 [2000]). By contrast, a weight of the evidence review requires this Court to make a threshold determination as to whether a different conclusion would have been unreasonable given all of the credible evidence (*see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Mateo*, 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004]). Where a different conclusion would not have been unreasonable, the Court " 'must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Perser*, 67 AD3d 1048, 1049 [2009], *lv denied* 13 NY3d 941 [2010], quoting *People v Romero*, 7 NY3d 633, 643 [2006]; *see People v Cahill*, 2 NY3d 14, 58 [2003]).

As relevant here, "[a] person is guilty of criminal sale of a controlled substance in the second degree when he [or she] knowingly and unlawfully sells . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug . . . of an aggregate weight of one-half ounce or more" (Penal Law § 220.41 [1]). Under Penal Law § 220.00 (1), a criminal sale includes an offer to sell or exchange drugs; thus, there is no requirement that an offer to sell or exchange drugs be consummated to sustain a conviction for criminal sale of a controlled substance (*see People v Samuels*, 99 NY2d 20, 24 [2002]; *People v Mike*, 92 NY2d 996, 998 [1998]). "However, in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell—i.e., that [the] defendant had both the intent and the ability to proceed with the sale" (*People v Mike*, 92 NY2d at 998 [citations omitted]; *accord People v Magee*, 135 AD3d 1176, 1177 [2016]; *People v Crampton*, 45 AD3d 1180, 1181 [2007], *lv denied* 10 NY3d 861 [2008]). "Because intent is an invisible operation of the mind" and direct evidence of intent is often unavailable, it may be inferred from the circumstances, including a defendant's statements and conduct (*People v Rodriguez*, 17 NY3d 486, 489 [2011] [internal quotation marks, brackets and citation omitted]; *see People v Magee*, 135 AD3d at 1177).

Here, the record evidence demonstrated that, prior to all three sales, the CI made controlled phone calls to defendant in the presence of special agents employed by the Drug Enforcement Agency (hereinafter DEA) to arrange for the purchase and sale of more than one-half ounce of crack cocaine on each occasion. In these calls, defendant—whose voice was identified by one of the DEA agents (*see People v Gray*, 57 AD3d 1473,

1475 [2008], *lv denied* 12 NY3d 854 [2009])—and the CI agreed on a price and amount for the crack cocaine and arranged to meet at specified locations to complete the sales. While the CI and defendant used coded language during these calls to discuss the price and amount of the cocaine, the DEA agent that was primarily involved in the controlled buy operations testified as to the meaning of the coded language and such language corresponded with the amount of premarked buy money that was ultimately provided to the CI. In addition, testimony given by the DEA agents involved in the controlled buy operations established that the CI was searched prior to each sale, provided with premarked buy money and an audio recording device to record the sales,[1] surveilled throughout the entirety of each sale and did not interact with anyone other than defendant. Testimony from DEA agents also established that, prior to each sale, defendant was observed either walking or driving from his home to the prearranged buy locations, where he would only briefly meet with the CI in the CI's vehicle. Their testimony further demonstrated that the CI was searched following each sale and found to be—on each occasion—without the premarked buy money, but in possession of more than a half ounce of a substance that later tested positive for cocaine. Finally, a DEA agent testified that, on those occasions that defendant drove to the prearranged location, the vehicle used by defendant was either registered to him or rented by him. While the CI did not testify,[2] and the sales were not directly observed by the DEA agents involved, we are nonetheless satisfied that the foregoing evidence was legally sufficient to support the jury's conclusion that defendant offered to sell the CI crack cocaine weighing more than one-half ounce on three occasions and had both the intent and ability to proceed with those sales (*see People v Magee*, 135 AD3d at 1177-1180; *compare People v Samuels*, 99 NY2d at 24). While an acquittal would not have been unreasonable given the absence of the CI's testimony, we are similarly satisfied that the verdict is not against the weight of the evidence (*see People v Williams*, 138 AD3d 1233, 1236 [2016], *lv denied* 28 NY3d 939 [2016]; *People v Magee*, 135 AD3d at 1177-1180).

---

1. These audio recordings, which were admitted into evidence and played for the jury, corroborated the testimony that defendant entered the CI's vehicle and seemed to demonstrate that an exchange took place.

2. On appeal, defendant argues that he was denied his right to confront the CI. However, inasmuch as defendant did not raise this argument in County Court, it is not preserved for our review (*see People v Wilson*, 144 AD3d 1500, 1501 [2016], *lv denied* 28 NY3d 1151 [2017]). Further, although the CI's absence is not adequately explained on the record, we note that County Court issued a missing witness charge to the jury.

Next, County Court did not abuse its discretion in reaching a *Sandoval* compromise. Of the three prior convictions that the People sought permission to question defendant about, if he testified, County Court barred inquiry into one of the convictions entirely, but ruled that the People could engage in a limited inquiry as to whether defendant was previously convicted of two prior felony offenses, without specifying the nature of the underlying crimes.[3] Although these two felony convictions were remote in time, "there is no bright-line rule of exclusion based upon age of conviction" (*People v Wilson*, 78 AD3d 1213, 1216 [2010], *lv denied* 16 NY3d 747 [2011]; *see People v Portis*, 129 AD3d 1300, 1303 [2015], *lv denied* 26 NY3d 1091 [2015]). Further, the court reasonably concluded that the two prior felony convictions, which were drug-related, were probative of defendant's credibility because they demonstrated defendant's willingness to place his interests above that of society, but that the prejudicial effect of allowing specific inquiry into these crimes would far outweigh any such probative value (*see People v Jackson*, 100 AD3d 1258, 1261 [2012], *lv denied* 21 NY3d 1005 [2013]; *People v Gangar*, 79 AD3d 1262, 1263-1264 [2010], *lv denied* 16 NY3d 831 [2011]). Accordingly, as County Court struck an appropriate balance in its *Sandoval* ruling, the ruling did not constitute an abuse of discretion (*see People v Nichol*, 121 AD3d 1174, 1175-1176 [2014], *lv denied* 25 NY3d 1205 [2015]; *People v Phillips*, 96 AD3d 1154, 1156-1157 [2012], *lv denied* 19 NY3d 1000 [2012]).

Nor was defendant denied a fair trial because one of the DEA agents testified, while being cross-examined by defendant, that defendant "was adept at hiding stuff" because he had been "charged with introducing items into a jail facility." While "[e]vidence of prior bad acts or uncharged crimes may be admitted when it falls within the list of recognized *Molineux* exceptions, completes the narrative of the charged crimes, provides necessary background information or is otherwise 'relevant to some issue other than the defendant's criminal disposition' and its prejudicial effect is outweighed by its probative value" (*People v Wells*, 141 AD3d 1013, 1019 [2016], quoting *People v Allweiss*, 48 NY2d 40, 47 [1979]; *see People v Burnell*, 89 AD3d 1118, 1120 [2011], *lv denied* 18 NY3d 922 [2012]), there was no pretrial *Molineux* ruling here. Following the DEA agent's improper testimony, County Court sustained defense counsel's immediate objection, struck the testimony from the record and instructed the jury to disregard the remark, stating that "[i]t

3. County Court further ruled that the People would be permitted to more fully inquire as to these convictions if defendant denied their existence.

[was] not evidence in th[e] case." Defense counsel did not request a mistrial and there was no further discussion regarding the improper testimony. As such, defendant failed to preserve for our review his argument that County Court should have granted him a mistrial (*see People v Heesh*, 94 AD3d 1159, 1163 [2012], *lv denied* 19 NY3d 961 [2012]; *People v Hughes*, 93 AD3d 889, 891 [2012], *lv denied* 19 NY3d 961 [2012]). To the extent that defendant's challenge to the improper testimony is preserved, we find that County Court's prompt curative actions of striking the testimony and instructing the jury to disregard the testimony were sufficient to remedy any resulting prejudice (*see People v Ruiz*, 148 AD3d 1212, 1216 [2017]; *People v Hughes*, 93 AD3d at 891; *compare People v Wallace*, 31 AD3d 1041, 1044-1045 [2006]).

Finally, we are unpersuaded by defendant's contention that his sentence is harsh and excessive. In sentencing defendant to three concurrent terms of 10 years in prison, County Court imposed a sentence below the maximum permissible sentence (*see* Penal Law § 70.71 [3] [b] [ii]), as well as the People's pretrial plea offers. Considering relevant sentencing factors, including defendant's criminal history and prior convictions relating to the sale of drugs, we discern no abuse of discretion in the sentence imposed by County Court, nor any extraordinary circumstances warranting a reduction of the sentence in the interest of justice (*see People v Danford*, 88 AD3d 1064, 1068 [2011], *lv denied* 18 NY3d 882 [2012]; *People v Marrero*, 41 AD3d 1091, 1091 [2007]).

To the extent that we have not expressly addressed any of defendant's remaining contentions, they have been considered and found to be lacking in merit.

McCarthy, J.P., Rose, Devine and Mulvey, JJ., concur. Ordered that the judgment is affirmed.