People v Valentin (2019 NY Slip Op 05015)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

People v Valentin

2019 NY Slip Op 05015

Decided on June 20, 2019

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 20, 2019

108683

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
vJOHN A. VALENTIN, Also Known as POPPY, Appellant.

Calendar Date: April 30, 2019
Before: Garry, P.J., Clark, Mulvey, Devine and Pritzker, JJ.


Catherine A. Barber, Guilderland, for appellant, and appellant pro se.
P. David Soares, District Attorney, Albany (Christopher D. Horn of counsel), for respondent.

MEMORANDUM AND ORDER
Garry, P.J.
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered July 1, 2016 in Albany County, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree (two counts), criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree.
In the spring of 2015, police officers conducted two controlled buys, in which a confidential informant (hereinafter CI) purchased heroin from defendant at his residence in the City of Albany. Defendant's residence was subsequently searched pursuant to a warrant, and heroin and items associated with the packaging and sale of drugs were recovered. In June 2015, defendant was charged in a six-count indictment. He was convicted following a jury trial of two counts of criminal sale of a controlled substance in the third degree, one count of criminal possession of a controlled substance in the third degree and one count of criminal possession of a controlled substance in the seventh degree, and was acquitted of two other charges. Defendant was sentenced, as a second felony offender, to prison terms of six years on each conviction of criminal sale of a controlled substance in the third degree and to three years on the conviction of criminal possession of a controlled substance in the third degree, to run consecutively to each other, and to a concurrent jail term of one year, plus three years of postrelease supervision, on the conviction of criminal possession of a controlled substance in the seventh degree. Defendant appeals.
Defendant contends that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence in that the People failed to call the CI to testify. Defendant's argument as to legal sufficiency is unpreserved for our review, as his general motion for a trial order of dismissal was not based upon the specific claim that he now asserts on appeal (see People v Finch, 23 NY3d 408, 423 [2014]; People v Spencer, 169 AD3d 1268, 1268 [*2][2019]). Nevertheless, our weight of the evidence review requires that we "consider whether all of the elements of the charged crimes were proven beyond a reasonable doubt" (People v Hackett, 167 AD3d 1090, 1091 [2018] [internal quotation marks and citations omitted]; see People v Danielson, 9 NY3d 342, 348-349 [2007]). As pertinent here, the People were required to prove that defendant knowingly and unlawfully sold a narcotic drug (see Penal Law § 220.39 [1]), that he knowingly and unlawfully possessed a narcotic drug (see Penal Law § 220.03), and that he knowingly and unlawfully possessed a narcotic drug with the intent to sell it (see Penal Law § 220.16 [1]).
At trial, the People presented the testimony of multiple police officers with the City of Albany Police Department, audio and video recordings of the controlled buys, and evidence related to the search of defendant's residence. Taken together, the evidence established that a detective on the narcotics task force was informed by the CI — with whom he had previously worked on other narcotics investigations — that defendant, known to her as "Poppy," was selling heroin from his residence in the City of Albany. In April and May 2015, two controlled buys were organized for the CI to purchase narcotics from defendant. Immediately prior to the first controlled buy, police officers searched the CI and her vehicle for contraband and provided her with prerecorded buy money. The CI was also fitted with an audio and video recording device and an additional device that transmitted audio live to the various officers conducting surveillance of the operation. The resulting video, which was played for the jury, shows the CI arriving at defendant's residence and being welcomed inside by an individual whom she called "Poppy." The detective identified defendant as the individual in the video. Defendant is later seen handing the CI a substance that he calls "china white," a name that the detective testified, based upon his extensive training and experience in narcotics investigations, refers to highly potent heroin. After leaving defendant's residence, the CI remained under surveillance as she returned to police officers and was searched; 10 glassine envelopes containing what proved to be heroin were recovered.
On a later date, the CI made telephone contact with defendant to schedule the second controlled buy. This phone call was recorded and the detective again identified defendant — whose voice he was familiar with based upon a prior in-person interaction — as the person conversing with the CI during the call. Police officers again searched the CI immediately prior to the second buy and provided her with prerecorded buy money and audio and video recording devices. Although the CI was heard on a live audio transmitting device briefly conversing with two people while walking to defendant's residence, officers conducting surveillance for the operation testified that the CI did not have any physical contact with these individuals. After entering defendant's residence, the video recording shows defendant handing the CI certain items for which the CI pays him before leaving. Thereafter, the CI, who remained under surveillance, immediately returned to the detective's location and a subsequent search of the CI recovered 10 glassine envelopes containing a substance that later tested positive for heroin. Although the detective testified that the CI had also returned any unused buy money at the end of each controlled buy, paperwork used to keep inventory of the operations did not include any such notation.
A search warrant for defendant's residence was obtained and executed thereafter. The detective testified that no one was home during the search, but that mail and rent receipts for the property addressed to defendant were found inside. Upon his arrest, defendant was in possession of a set of keys to the residence. A sergeant with the Albany Police Department testified that the search yielded, among other things, a quantity of heroin packaged in 44 glassine envelopes and organized into bundles, and a ledger. A sergeant testified that other items discovered during the search — such as "plastic baggies" in the bedroom, a razor blade in the kitchen, rubber bands, a false-bottom container, and a digital scale — were commonly used for the measuring and packaging of illegal narcotics. Over defense counsel's objections, the sergeant further testified that, based upon his extensive "training and experience" in narcotics investigations, the names and numbers noted in the ledger were indicative of "drug sales and heroin transactions." At defense counsel's request, Supreme Court instructed the jury that the contents of the ledger could only be considered as to defendant's intent to sell in relation to the charge of criminal sale of [*3]controlled substance in the third degree. Defendant did not present any witnesses or testify on his own behalf.
Had the jury declined to credit the People's evidence as to the identification of defendant on the audio recordings and interpretation of his actions in the videos presented, a different verdict would not have been unreasonable. Accordingly, "this Court must 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'" (People v Durfey, 170 AD3d 1331, 1332 [2019], quoting People v Bleakley, 69 NY2d 490, 495 [1987]). Viewing the evidence in a neutral light and deferring to the jury's "opportunity to view the witnesses, hear the testimony and observe demeanor," we are satisfied that, although the CI did not testify, defendant's convictions are supported by the weight of the evidence (People v Romero, 7 NY3d 633, 644 [2006] [internal quotation marks and citation omitted]; see People v Pearson, 151 AD3d 1455, 1456 [2017], lv denied 30 NY3d 982 [2017]; People v Gethers, 151 AD3d 1398, 1399-1400 [2017], lv denied 30 NY3d 980 [2017]; People v Wilkins, 75 AD3d 847, 849 [2010], lv denied 15 NY3d 857 [2010]).
Defendant next contends that he was improperly denied a missing witness charge with respect to the People's failure to call the CI to testify, as the CI was the only eyewitness to the controlled buys. A missing witness charge permits "a jury to draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of events" (People v Savinon, 100 NY2d 192, 196 [2003]). The charge is warranted where it is established that "(1) the witness's knowledge is material to the trial; (2) the witness is expected to give noncumulative testimony; (3) the witness is under the control of the party against whom the charge is sought, so that the witness would be expected to testify in that party's favor; and (4) the witness is available to that party" (People v Martinez, 166 AD3d 1292, 1296 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 1207 [2019]; see DeVito v Feliciano, 22 NY3d 159, 165-166 [2013]). The issue here distills to whether the CI's testimony would have been cumulative; we agree with the People that, under the circumstances, the testimony would have been cumulative, as the officers' collective testimonies were corroborated by multiple video and audio recordings detailing the controlled buys. Accordingly, the charge was not warranted, and Supreme Court ameliorated any prejudice by permitting defense counsel to nonetheless comment on the CI's absence during summation (see People v Wilkins, 75 AD3d at 849; People v Darby, 72 AD3d 1280, 1282-1283 [2010], lv denied 15 NY3d 749 [2010]; see also People v Pearson, 151 AD3d at 1457).
We are unpersuaded by defendant's argument that his counsel's failure to make a pretrial motion to suppress the ledger deprived him of the effective assistance of counsel. A counsel's failure "to make a particular pretrial motion generally does not, by itself, establish ineffective assistance of counsel" (People v Rivera, 71 NY2d 705, 709 [1988]; see People v Paige, 289 AD2d 872, 873 [2001], lv denied 97 NY3d 759 [2002]). Further, ineffective assistance does not result from "failure to make a motion or argument that has little or no chance of success" (People v Caban, 5 NY3d 143, 152 [2005] [internal quotation marks and citation omitted]). We agree with Supreme Court's assessment that the ledger's contents and related testimony were "admissible as to possession with intent to sell" such that "it would clearly have survived the Molineux application" had it been made (see People v Nicholas, 130 AD3d 1314, 1316 [2015]; People v Butts, 177 AD2d 782, 783 [1991]). In any event, the record reflects that defense counsel vigorously objected to testimony regarding its contents during trial and successfully obtained an appropriate limiting instruction (see People v Kims, 24 NY3d 422, 439 [2014]).
We similarly reject defendant's claim that his counsel was ineffective based upon his inquiry on voir dire that led to testimony regarding the discovery of ammunition and marihuana in defendant's home. In proving an ineffective assistance claim, "defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's alleged failure" (People v Nicholson, 26 NY3d 813, 831 [2016]; accord People v Newman, 169 AD3d 1157, 1162 [2019]). Here, counsel's stated purpose in following this line of questioning was to show that the People's exhibit included only certain photographs taken during the search of defendant's residence, and [*4]"'counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective'" (People v Thomas, 105 AD3d 1068, 1071 [2013], quoting People v Benevento, 91 NY2d 708, 712 [1998]). In any event, Supreme Court remedied any prejudice by instructing the jury to disregard the testimony. Viewing counsel's performance "in totality," and mindful that defendant was acquitted of two of the six charges against him, we find that defendant received "meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]; see People v Leflore, 154 AD3d 1164, 1168 [2017], lv denied 30 NY3d 1106 [2018]).
We are unpersuaded by defendant's contention that his sentence was harsh and excessive. Defendant, a second felony offender with a lengthy criminal history involving multiple drug-related offenses, received a sentence well within the statutory guidelines. Accordingly, we find no abuse of discretion or extraordinary circumstances to warrant the reduction of the sentence in the interest of justice (see People v Quintana, 159 AD3d 1122, 1128 [2018], lv denied 31 NY3d 1086 [2018]; People v Johnson, 151 AD3d 1462, 1466 [2017], lv denied 30 NY3d 1106 [2018]; People v Lee, 129 AD3d 1295, 1300 [2015], lv denied 27 NY3d 1001 [2016]).
Finally, defendant's pro se claims are without merit, as the actions alleged do not constitute prosecutorial misconduct (see generally People v Hughes, 111 AD3d 1170, 1173 [2013], lv denied 23 NY3d 1038 [2014]; People v Serrano, 14 AD3d 874, 874 [2005], lv denied 4 NY3d 803 [2005]).
Clark, Mulvey, Devine and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.