People v Magnuson (2019 NY Slip Op 08450)





People v Magnuson


2019 NY Slip Op 08450


Decided on November 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2019

109262

[*1]The People of the State of New York, Respondent,
v
Jason B. Magnuson, Appellant.

Calendar Date: October 17, 2019

Before: Garry, P.J., Clark, Mulvey, Aarons and Pritzker, JJ.


Corey Zennamo, Frankfort, for appellant.
William G. Gabor, District Attorney, Wampsville (J. Scott Porter of counsel), for respondent.



Mulvey, J.
Appeal from a judgment of the Supreme Court (Cerio Jr., J.), rendered February 24, 2016 in Madison County, upon a verdict convicting defendant of the crimes of burglary in the third degree (three counts), petit larceny (three counts), conspiracy in the fifth degree (two counts), resisting arrest, reckless endangerment in the second degree, unlawful fleeing a police officer in a motor vehicle in the third degree and reckless driving.
In October 2014, Walmart banned defendant and Steven Smith from all of its properties. On November 1, 2014, Smith entered a Walmart store in the City of Oneida, Madison County at 9:11 a.m. and walked around the store moving merchandise into different carts. At 11:06 a.m., he eventually paid for a mop bucket and gaming chair, apparently switched carts and left the store with over $3,000 worth of stolen electronic merchandise and other items hidden inside boxes corresponding to the items he had just purchased. Smith brought the merchandise to a vehicle being driven by defendant. At 11:14 a.m., Smith reentered the store and — without paying for anything at this time — exited a few minutes later with a cart containing a mop bucket and gaming chair. He again brought the merchandise to the vehicle driven by defendant. At 11:39 a.m., defendant entered the store with a mop bucket and gaming chair, along with a receipt for those items, and returned them at the customer service desk, receiving a refund of the purchase price after an employee verified that the items were indeed in the boxes being returned. For this activity, in addition to other shoplifting from the same store and attendant interactions with law enforcement, defendant was charged in a 17-count indictment alleging various crimes committed both directly and as an accomplice.
Following a trial, the jury convicted defendant of burglary in the third degree (three counts), petit larceny (three counts), conspiracy in the fifth degree (two counts), resisting arrest, reckless endangerment in the second degree, unlawful fleeing a police officer in a motor vehicle in the third degree and reckless driving. Supreme Court sentenced defendant, as a second felony offender, to prison terms of 2½ to 5 years for each conviction of burglary in the third degree, with count 1 (based on the 11:39 a.m. burglary) to run consecutively to count 3 (based on the 11:14 a.m. burglary) and count 7 (based on the 9:11 a.m. burglary), and counts 3 and 7 running concurrently to each other. For the misdemeanor convictions, the court imposed one-year jail sentences, which all merge with the prison sentences. Defendant appeals.
Defendant argues that the evidence is legally insufficient to support the burglary counts. In reviewing the legal sufficiency of the evidence for defendant's preserved claims, this Court must determine whether, when viewing the evidence in the light most favorable to the People, "there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime[s] charged" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal citation omitted]; accord People v West, 166 AD3d 1080, 1083-1084 [2018], lv denied 32 NY3d 1129 [2018]; People v Gethers, 151 AD3d 1398, 1398-1399 [2017], lv denied 30 NY3d 980 [2017]). "A person is guilty of burglary in the third degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20). "A person 'enters or remains unlawfully' in or upon premises when he [or she] is not licensed or privileged to do so" (Penal Law § 140.00 [5]). Additionally, "[a] person is guilty of petit larceny when he [or she] steals property" (Penal Law § 155.25). "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself[, herself] or to a third person, he [or she] wrongfully takes, obtains or withholds such property from an owner thereof" (Penal Law § 155.05 [1]).
The only relevant arguments that defendant raised in his trial motion to dismiss — and, thus, the only preserved arguments — are that the evidence failed to prove that he and Smith were banned from all Walmart stores or that he knew that he and Smith were so banned, such that defendant could not have had the requisite mental state of knowing that he or Smith unlawfully entered the store. The evidence refutes this argument. A former asset protection associate at a Walmart store in Waterbury, Connecticut testified that, in October 2014, both Smith and defendant were present at the same time in a 12-foot by 16-foot office when defendant was issued a letter indicating that he was banned from all Walmart stores. The associate explained the letter to defendant verbally, as defendant could not sign it due to being handcuffed. The associate testified that defendant was present when Smith was issued the same ban letter. Copies of each letter were admitted into evidence. This evidence was legally sufficient to establish that defendant knew that he and Smith were banned from all Walmart stores, rendering their entry unlawful. Thus, as to the only preserved arguments, the evidence was legally sufficient to support the convictions (see People v Edmonds, 165 AD3d 1494, 1495-1496 [2018]; People v Morrison, 127 AD3d 1341, 1343 [2015], lv denied 26 NY3d 932 [2015]).
Defendant also contends that the verdicts convicting him of burglary in the third degree and certain related crimes are against the weight of the evidence. "A weight of the evidence review requires [this Court] first to decide whether, based on all the credible evidence, a different finding would not have been unreasonable, and then, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony. When conducting a review of the weight of the evidence, we view the evidence in a neutral light and defer to the jury's credibility assessments" (People v Nunes, 168 AD3d 1187, 1188 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 979 [2019]; see People v Werkheiser, 171 AD3d 1297, 1298 [2019], lv denied 33 NY3d 1109 [2019]). It is undisputed that Smith and defendant entered a building. Based on the evidence noted above, the jury could reasonably have concluded that defendant knew that they were both banned from Walmart property, making their entries unlawful. The element of burglary in the third degree at issue is whether they had the intent to commit a crime in the building when they entered (see Penal Law § 140.20).
The testimony of Walmart employees and the surveillance video demonstrate that Smith spent nearly two hours in the store moving merchandise between carts and staging carts with similar items. An employee testified that they later located a mop bucket and gaming chair in different parts of the store; from the context of the answers, it can reasonably be inferred that those items were not in their boxes when they were discovered.[FN1] It appears that after Smith made his purchases but before he exited the store the first time, he switched the cart holding the purchased merchandise with a cart that looked similar because it held boxes for the mop bucket and the gaming chair, which boxes did not contain those items but instead contained the stolen electronics and other items. Stated another way, Smith left the cart of purchased items in the store and exited with stolen items secreted in boxes correlating to the items he had just purchased. Defendant's intent, assistance and knowledge of Smith's actions were established by defendant moving the vehicle to different spots in the parking lot, helping load the items into the car, and his actions on another date when Smith attempted a similar scheme and defendant fled from the police (as reflected in counts 11-17). Thus, the verdict regarding the 9:11 a.m. burglary was not against the weight of the evidence.
A different finding would not have been unreasonable as to the 11:14 a.m. and 11:39 a.m. burglaries. If Smith simply switched the carts after making his purchase and exited the first time with only the stolen items hidden in boxes made for the same products that he purchased, then the cart he exited with the second time would have contained only the items that he purchased. Under those circumstances, in which, at 11:14 a.m., Smith removed from the store only items that he had purchased, no burglary occurred at that time. On the video, store security alarms lit up when Smith exited the first time, but not when he exited the second time or when defendant entered with items to return. There is a slim possibility that, before his first exit, Smith did not simply switch one cart for another but instead moved some of the stolen items so that he took a mixture of some of the stolen merchandise and some of the purchased items on each of his first and second exits; in that situation, each of Smith's two trips into the store could constitute a burglary. Although that scenario is possible, the brief period of time during which Smith was unable to be seen by the surveillance cameras makes it unlikely that he could have moved items between the cart of purchased items and the staged cart. As it is unclear which of these scenarios happened, and either is possible, the People did not prove beyond a reasonable doubt that a second burglary occurred at 11:14 a.m. Accordingly, the verdicts on counts 3 and 5 (the 11:14 a.m. burglary and related petit larceny) are against the weight of the evidence. Because the overt act alleged to support count 4 (conspiracy in the fifth degree related to the 11:14 a.m. burglary) was the theft of the mop bucket and gaming chair at that time, which we have concluded was not adequately proven, the conviction on that count is also against the weight of the evidence.
We reach the same result regarding counts 1 and 2 (the 11:39 a.m. burglary and related petit larceny). A store employee testified that Smith legitimately purchased certain items, albeit as part of his burglary scheme.[FN2] Defendant then used the receipt from those legitimate purchases and returned those items. Before giving defendant a refund, an employee opened the boxes to verify that the proper items were inside. Although the People assert that defendant returned stolen items for a refund, their argument fails regardless of how we interpret the evidence. First, it appears that Smith did not actually take two mop buckets and gaming chairs from the store; rather, he bought (during his first entrance) and exited the store with (during his second entrance at 11:14 a.m.) one of each of those items, and also emptied the boxes for one of each and used those boxes — without the mop bucket or gaming chair — to take other smaller merchandise out of the store. Under that scenario, where Smith purchased only one of each item, defendant must have returned the items that Smith purchased.
Alternatively, if, in addition to his purchases, Smith somehow stole a mop bucket and gaming chair in their boxes — which is unlikely because one of each of those items was located in the store outside of any box — with other unpurchased items hidden in the boxes around them, he would have had two of each item. Under those circumstances, defendant may have returned either the mop bucket and gaming chair that Smith purchased or the identical items that had been stolen. An employee testified that a person would not be able to tell the difference between an identical item that had been stolen and one that had been purchased. Presumably, the store does not care which of two identical items are returned to it, as long as the refund is made for the exact make and model of an item that had been purchased from that store. For example, if a person bought one item on Tuesday and an identical item on Wednesday, it seems that the store would not know or care if the person went back to the store for a refund with Wednesday's item but brought Tuesday's receipt for the identical item.
Under either of those scenarios, the evidence demonstrates that when defendant entered the store at 11:39 a.m., he intended to return items that Smith had purchased — again, albeit as part of a burglary scheme — for a refund of the purchase price (compare State v Jennings, 2011 WL 2226458, *1, 4; 2011 NC App LEXIS 1348, *3-4, 11 [NC Ct App, June 7, 2011]). As returning purchased items is not a crime, the People failed to prove that defendant intended to commit a crime when he unlawfully entered the store, or that he stole money from the store by accepting a refund when returning items that actually had been purchased (see Penal Law §§ 140.20, 155.05 [1]). Accordingly, the convictions on counts 1 and 2 are against the weight of the evidence, requiring dismissal of those counts.
Defendant is not entitled to relief based on Supreme Court's declination to charge any lesser included offenses for the burglary counts. "A defendant is entitled to a lesser included offense charge upon request when (1) it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct and (2) there is a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater" (People v Morrison, 127 AD3d at 1344 [internal quotation marks, brackets and citations omitted]). As we have dismissed counts 1 and 3, we need not address whether defendant was entitled to charges for any lesser included offenses related to those counts. Regarding count 7, even viewing the evidence in the light most favorable to defendant (see id.), he was not entitled to a charge for any lesser included offense. Criminal trespass in the third degree was not applicable here because the record does not disclose that the building or property was "fenced or otherwise enclosed in a manner designed to exclude intruders" (Penal Law § 140.10 [a]; see People v Moore, 5 NY3d 725, 726-727 [2005]), or that any of the other enumerated aggravating factors existed (see Penal Law § 140.10 [b]-[g]). Although it is impossible to commit burglary in the third degree without concomitantly committing the violation of trespass (see Penal Law § 140.05; People v Barringer, 54 AD3d 442, 444 [2008], lvs denied 11 NY3d 830, 836 [2008]), no reasonable view of the evidence would support a finding that Smith entered the store unlawfully at 9:11 a.m. but without an intent to commit a crime therein, or that defendant was unaware of or failed to share Smith's intent (see People v Morrison, 127 AD3d at 1344-1345; People v Alsaifullah, 96 AD3d 1103, 1104 [2012], lv denied 19 NY3d 994 [2012]; compare People v Grant, 132 AD2d 929, 930 [1987], lv denied 70 NY2d 750 [1987]). Accordingly, the court did not err in declining to provide the jury with a charge for a lesser included offense in relation to count 7 (see People v Blim, 63 NY2d 718, 720-721 [1984]).
Because we are dismissing certain counts, defendant's argument concerning the sentences imposed is academic.
Garry, P.J., Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is modified, on the facts, by reversing defendant's convictions of burglary in the third degree, petit larcency and conspiracy in the fifth degree under counts 1, 2, 3, 4 and 5 of the indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.



Footnotes

Footnote 1: The employee testified that the gaming chair was left in the garden center, where Smith had been staging merchandise in an area out of view of the surveillance cameras, and the mop bucket was left on a shelf. The video shows Smith concealing an unboxed mop bucket by placing other items in front of and on top of it.

Footnote 2: It appears that Smith made the valid purchases so that he could have a receipt when leaving the store with the stolen items hidden in the emptied boxes correlating to the purchased items, and so that he could go back into the store and again have the receipt when exiting with the items he had purchased.